# EXHIBIT 1

Beglaubigte Kopie

# RECHTSANWALTSKANZLEI

## GRZIMEK

Landgericht Düsseldorf
- Patentstreitkammer -
Werdener Str. 1
40227 Düsseldorf

Benjamin Grzimek
Rechtsanwalt
Königsallee 14
D-40212 Düsseldorf

Tel.:   0049 (0) 211 / 13866-296
Fax:   0049 (0) 211 / 13866-77
E-Mail: bgrzimek@eip.com

Unser Zeichen: 434.LM2



10. März 2014

**KLAGE**

**der Unwired Planet International Ltd.,** Alexandra House, The Sweepstakes, Ballsbridge,
Dublin 4, Irland, gesetzlich vertreten durch den Geschäftsführer (CEO) Sami Saru, ebenda,

– Klägerin –

Prozessbevollmächtigte:     Benjamin Grzimek
Rechtsanwaltskanzlei Grzimek,
Königsallee 14,
40212 Düsseldorf

mitwirkend
Rechtsanwalt Hosea Haag
AMPERSAND Rechtsanwälte LLP,
Haydnstraße 10,
80336 München

sowie als Patentanwalt mitwirkend
David Molnia
df-mp Dörries Frank-Molnia & Pohlman
Patentanwälte Rechtsanwälte PartG mbB
Fünf-Höfe, Theatinerstraße 16,
80333 München

g e g e n

1. **Google Inc.,** 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA, gesetzlich vertreten durch den Geschäftsführer (CEO) Larry Page, ebenda,

– **Beklagte zu 1 –**

2. **Google Commerce Ltd.,** Gordon House, Barrow Street, Dublin 4, Ireland, gesetzlich vertreten durch die Geschäftsführer John Thomas Herlihy und Ronan Harris, ebenda,

– **Beklagte zu 2 –**

3. **Google Germany GmbH,** ABC-Straße 19, 20354 Hamburg, gesetzlich vertreten durch den Geschäftsführer Philipp Justus, ebenda ,

– **Beklagte zu 3 –**

4. **Samsung Electronics Co., Ltd.,** Seoul Headquarters, Samsung Main Building 250-2 ga, Taepyung-ro, Choong-gu, Seoul, Süd-Korea, gesetzlich vertreten durch den Vorstand, dieser vertreten durch die Vorsitzenden Kwon Oh-hyun und Jong-Kyun Shin, ebenda,

– **Beklagte zu 4 –**

5. **Samsung Electronics GmbH,** Samsung House, Am Kronberger Hang 6, 65824 Schwal-bach/Ts., gesetzlich vertreten durch den Geschäftsführer Dong-Min Kim, ebenda,

– **Beklagte zu 5 –**

6. **Huawei Technologies Co. Ltd.,** CeBIT 2014 Messegelände, Halle 2, Stand C50, 30521 Hannover, gesetzlich vertreten durch den Geschäftsführer Ren Zhengfei, Bantian Long-gang, Shenzhen, Volksrepublik China,

– **Beklagte zu 6 –**

7. **Huawei Technologies Deutschland GmbH,** Willy-Brandt-Allee 20, 53113 Bonn, ge-setzlich vertreten durch den Geschäftsführer Jingwen Tao, ebenda,

– **Beklagte zu 7 –**

8. **Huawei Technologies Düsseldorf GmbH,** Am Seestern 24, 40547 Düsseldorf, gesetzlich vertreten durch die Geschäftsführer Jingwen Tao und Chen Lifang und Meng Wanzhou, ebenda,

– **Beklagte zu 8** –

9. **HTC Germany GmbH**, Solmsstraße 18, Building E 60486 Frankfurt am Main, gesetzlich vertreten durch den Geschäftsführer Peter Chou, ebenda,

– **Beklagte zu 9** –

wegen      **Patentverletzung**

Streitwert (vorläufig geschätzt):      **30.000.000,00 Euro**

Namens und in Vollmacht der Klägerin erhebe ich Klage und werde in der mündlichen Verhandlung beantragen:

A-I.   **Die Beklagten zu 1 bis 7 und 9 werden verurteilt, es bei Meidung eines für jeden Fall der Zuwiderhandlung vom Gericht festzusetzenden Ordnungsgeldes bis zu EUR 250.000,00 – ersatzweise Ordnungshaft – oder einer Ordnungshaft bis zu sechs Monaten, im Falle wiederholter Zuwiderhandlungen bis zu insgesamt zwei Jahren, wobei die Ordnungshaft an den gesetzlichen Vertretern der jeweiligen Beklagten zu vollstrecken ist, zu unterlassen,**

1. **ein Verfahren zum sicheren Übertragen von Daten zwischen einem Klienten und einem Server über einen Schmalbandkanal, wobei der Klient und der Server nicht nur durch den Schmalbandkanal verbindbar sind, sondern auch durch einen Breitbandkanal,**
**in der Bundesrepublik Deutschland anzuwenden oder zur Anwendung anzubieten,**
**wenn das Verfahren die folgenden Schritte aufweist: Verbinden des Klienten und des Servers über den Breitbandkanal; Austauschen von Sicherheitsinformationen zwischen dem Klienten und dem Server über den Breitbandkanal;**

Signieren von vom Server zum Klienten zu übertragenden Daten basierend auf der Sicherheitsinformation; Übertragen der signierten Daten vom Server zum Klienten über den Schmalbandkanal, wobei wenigstens ein Teil des Schmalbandkanals und des Breitbandkanals drahtlos ist;

(Anspruch 6 des Klagepatents A – EP 989 712 B1)

2. Funkvorrichtungen, die ein Netzwerk von Computern über eine drahtlose Verbindung verbinden können, anzubieten, in Verkehr zu bringen oder zu den genannten Zwecken entweder einzuführen oder zu besitzen,

wenn die Funkvorrichtungen einen Anzeigebildschirm, der Graphiken und Texte anzeigt; einen Nachrichtenpuffer, der eine Nachricht von einem Computer am Netzwerk von Computern temporär speichert, wobei die Nachricht ein damit verbundenes Dienstkennzeichen hat; eine Anwendung, die die vom Computer am Netzwerk von Computern empfangene Nachricht verwendet; und eine kryptographische Steuerung, die eine Verschlüsselung oder Signatur von abgehenden Nachrichten steuert und die Entschlüsselung oder Authentifizierung von ankommenden Nachrichten steuert, wobei die kryptographische Steuerung arbeitet, um eine sichere Verbindung, über die sie die ankommenden Nachrichten empfängt, durch Verwenden eines Einwegkanals aufzubauen, wobei ein dazugehöriger Zweiwegekanal verwendet wird, um Sicherheitsinformation auszutauschen, die zum Aufbauen der sicheren Verbindung über den Einwegkanal nötig ist, aufweisen;

(Anspruch 7 des Klagepatents A – EP 989 712 B1)

A-II. Die Beklagten zu 1 bis 7 und 9 werden weiter verurteilt, der Klägerin in einer geordneten Aufstellung darüber Auskunft zu erteilen, in welchem Umfang sie jeweils die unter A-1. genannten Verletzungshandlungen  seit dem 6. Mai 2005 begangen haben, und zwar, soweit zutreffend, unter Angabe

a) der erhaltenen oder bestellten Erzeugnisse, aufgeschlüsselt nach der jeweiligen Menge, Zeiten, Preise, sowie der Namen und Anschriften der Hersteller, Lieferanten und anderer Vorbesitzer;

b)    der einzelnen Lieferungen, aufgeschlüsselt nach Liefermengen, -zeiten und -preisen und der jeweiligen Typenbezeichnungen, sowie den Namen und Anschriften der Abnehmer;

c)    der einzelnen Angebote, aufgeschlüsselt nach Angebotsmengen, -zeiten und -preisen, sowie den Namen und Anschriften der Angebotsempfänger;

d)    der betriebenen Werbung, aufgeschlüsselt nach Werbeträgern, deren Auflagenhöhe, Verbreitungszeitraum und Verbreitungsgebiet, im Falle von Internet-Werbung der Domain, der Suchmaschinen und anderer Marketingwerkzeuge, mit Hilfe derer die betroffenen Webseiten einzeln oder gemeinsam registriert wurden, der Zugriffszahlen und der Schaltungszeiträume jeder Kampagne;

e)    der nach den einzelnen Kostenfaktoren aufgeschlüsselten Gestehungskosten und des erzielten Gewinns, einschließlich der Umsätze, die mit Zubehör erzielt wurden;

wobei die Beklagten zu 1 bis 7 und 9 die Richtigkeit ihrer Angaben nach a) bis c) und e) belegen müssen, indem sie Belegkopien wie Rechnungen und Lieferscheine (oder andere Lieferdokumente) vorlegen;

wobei den jeweiligen Beklagten vorbehalten bleibt, die Namen und Anschriften der nicht gewerblichen Abnehmner und Angebotsempfänger statt der Klägerin einem von der Klägerin zu bezeichnenden, ihr gegenüber zur Verschwiegenheit verpflichteten vereidigten Wirtschaftsprüfer mitzuteilen, sofern die Beklagten dessen Kosten tragen und ihn ermächtigen und verpflichten, der Klägerin auf konkrete Anfrage mitzuteilen, ob ein bestimmter Abnehmer oder Angebotsempfänger in der Aufstellung enthalten ist;

**A-III.** Es wird festgestellt, dass die Beklagten zu 1 bis 7 und 9 jeweils verpflichtet sind, der Klägerin sämtliche Schäden zu ersetzen, die ihr durch die unter A-1. bezeichneten Verletzungshandlungen seit dem 6. Mai 2005 entstanden sind und noch entstehen werden;

**A-IV.** Die Beklagten zu 1 bis 7 und 9 werden verurteilt, der Klägerin zu erlauben, eine Zusammenfassung des Urteils unter Nennung der jeweiligen Beklagten auf Kosten der Beklagten in drei aufeinander folgenden Ausgaben des Magazins *Spiegel* zu veröffentlichen;

**A-V.** Die Beklagten zu 1 bis 7 und 9 tragen die Kosten des Rechtsstreits;

**A-VI.** Die Klägerin darf als Sicherheit jede unbedingte, unbegrenzte, garantierte Bankbürgschaft einer deutschen Bank oder öffentlichen Sparkasse, die als Zoll- und Steuerbürge anerkannt ist, leisten.

**B-I.** **Die Beklagten werden verurteilt, der Klägerin Auskunft über den Umfang der folgenden von ihnen begangenen Verletzungshandlungen, jeweils seit dem 4. August 2007, zu erteilen:**

1. **Anwenden und Anbieten zur Anwendung (bzgl. der Beklagten zu 1 bis 7 und 9) eines Verfahrens in der Bundesrepublik Deutschland zum Bestimmen einer Verwürfelungscodegruppe für ein empfangenes Signal in einem Digitalkommunikationssystem, in dem Signale durch jeweilige Verwürfelungscodes verwürfelt sind, wobei die Verwürfelungscodes jeweiligen Verwürfelungscodegruppen zugewiesen sind, wobei die Identitäten der Verwürfelungscodegruppen in den Signalen durch jeweilige codewortmäßig zyklisch unterschiedliche Sequenzen von Codewörtern codiert sind, wenn das Verfahren die Schritte umfasst zum Korrelieren des empfangenen Signals mit zyklischen Verschiebungen von jedem von einer Vielzahl von Sequenzen von Codewörtern, wobei die Codewörter S-Hadamard-Sequenzen sind; Kombinieren der Korrelationen für jede von der Vielzahl von Sequenzen von Codewörtern; und Bestimmen einer maximalen kombinierten Korrelation, um die Verwürfelungscodegruppe für das empfangene Signal zu identifizieren;**

   **(Anspruch 3 des Klagepatents B – EP 1 105 991 B1)**

   **insbesondere wenn**

   **jede Sequenz von Codewörtern einem Rahmen des empfangenen Signals entspricht und das Bestimmen der maximalen kombinierten Korrelation einen Start des Rahmens identifiziert;**

   **(Unteranspruch 4 des Klagepatents B – EP 1 105 991 B1)**

   **und/oder wenn**

   **die Korrelationen kohärent kombiniert werden;**

   **(Unteranspruch 5 des Klagepatents B – EP 1 105 991 B1)**

und/oder wenn

die Korrelationen nicht-kohärent kombiniert werden;

(Unteranspruch 6 des Klagepatents B – 1 105 991 B1)

2. Anbieten und Liefern an Abnehmer (bzgl. der Beklagten zu 4 bis 6 und 8) in der Bundesrepublik Deutschland von Netzwerkvorrichtungen, die dazu geeignet und bestimmt sind, in Digitalfunkübertragungs-Systemen mit mindestens einem Sender und wenigstens einem Empfänger verwendet zu werden, wenn das Digitalfunkübertragungs-System eine Einrichtung in dem Sender zum Erzeugen eines Synchronisationssignals, das vorzeichenbehaftete Versionen von S-Hadamard-Sequenzen enthält, wobei die S-Hadamard-Sequenzen Mitgliedern eines ersten Satzes von Walsh-Hadamard-Sequenzen entsprechen, die positionsmäßig mit einer Spezialsequenz mit komplexen Elementen konstanter Größe verwürfelt sind; eine Einrichtung in dem Empfänger zum Schätzen einer Zeitortsbestimmung und einer Sequenzidentität einer empfangenen Version des Synchronisationssignals;

(Anspruch 7 des Klagepatents B – EP 1 105 991 B1)

insbesondere wenn

die Schätzeinrichtung die empfangene Version auf der Grundlage der Spezialsequenz entwürfelt und die entwürfelte empfangene Version mit Mitgliedern des ersten Satzes von Walsh-Hadamard-Sequenzen zum Identifizieren der Sequenzidentität entwürfelt;

(Unteranspruch 8 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

die Schätzeinrichtung mit Verwenden einer schnellen Walsh-Transformation korreliert;

(Unteranspruch 9 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

die Schätzeinrichtung die empfangene Version mit den S-Hadamard-Sequenzen zum Identifizieren der Sequenzidentität korreliert;

(Unteranspruch 10 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

die Schätzeinrichtung die empfangene Version auf der Grundlage der Spezialsequenz entwürfelt, fortlaufende Teildekorrelationen der entwürfelten empfangenen Version mit einer Untersequenz eines Mitgliedes des ersten Satzes von Walsh-Hadamard-Sequenzen bildet, und die fortlaufenden Teildekorrelationen mit Mitgliedern eines zweiten Satzes von Walsh-Hadamard-Sequenzen korreliert, und die Mitglieder des zweiten Satzes Längen haben, die geringer als die Längen der Mitglieder des ersten Satzes sind;

(Unteranspruch 11 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

die Schätzeinrichtung die fortlaufenden Teildekorrelationen mit Mitgliedern des zweiten Satzes mit Verwenden einer schnellen Walsh-Transformation korreliert;

(Unteranspruch 12 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

die Schätzeinrichtung fortlaufende Teildekorrelationen der empfangenen Version mit einer Vielzahl von Kurzsequenzen bildet und die fortlaufenden Teildekorrelationen mit Mitgliedern eines zweiten Satzes von Walsh-Hadamard-Sequenzen korreliert, und die Kurzsequenzen und die Mitglieder des zweiten Satzes Längen haben, die geringer als die Längen der Mitglieder des ersten Satzes sind, und wobei die Kurzseqenzen einer positionsmäßigen Multiplikation der Spezialsequenz und einer Untersequenz eines Mitglieds des ersten Satzes entsprechen;

(Unteranspruch 13 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

die Schätzeinrichtung die fortlaufenden Teildekorrelationen mit Mitgliedern des zweiten Satzes mit Verwenden einer schnellen Walsh-Transformation korreliert;

(Unteranspruch 14 des Klagepatents B – EP 1 105 991 B1)

3.  Anwenden und Anbieten zur Anwendung (bzgl. der Beklagten zu 1 bis 7 und 9) eines Verfahrens in der Bundesrepublik Deutschland zum Bestimmen einer Zeitortsbestimmung eines empfangenen Signals und Identifizieren einer Walsh-Hadamard-Sequenz, die als eine S-Hadamard-Sequenz codiert ist, die in dem empfangenen Signal enthalten ist, wobei die S-Hadamard-Sequenz ein Produkt der Walsh-Hadamard-Sequenz und einer Spezialsequenz mit komplexen Elementen einer konstanten Größe ist, und die Walsh-Hadamard-Sequenz ein Mitglied eines ersten Satzes von Walsh-Hadamard-Sequenzen ist, wenn dieses folgende Schritte umfasst: Bilden eines positionsmäßigen Produktes des empfangenen Signals und der Spezialsequenz; und Korrelieren des Produktes mit jeder von einer Vielzahl von Walsh-Hadamard-Sequenzen zum Identifizieren der in dem empfangenen Signal codierten Walsh-Hadamard-Sequenz;

(Anspruch 17 des Klagepatents B – EP 1 105 991 B1)

insbesondere wenn

das positionsmäßige Produkt mit Mitgliedern des ersten Satzes auf der Grundlage einer schnellen Walsh-Transformation korreliert wird;

(Unteranspruch 18 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

das positionsmäßige Produkt korreliert wird durch Bilden fortlaufender Teildekorrelationen des positionsmäßigen Produkts mit einer Untersequenz eines Mitglieds des ersten Satzes von Walsh-Hadamard-Sequenzen und Korrelieren der fortlaufenden Teildekorrelationen mit Mitgliedern eines zweiten Satzes

von Walsh-Hadamard-Sequenzen, und wobei die Mitglieder des zweiten Satzes Längen haben, die geringer als die Längen der Mitglieder des ersten Satzes sind;

(Unteranspruch 19 des Klagepatents B – EP 1 105 991 B1)

4.   Anwenden und Anbieten zur Anwendung (bzgl. der Beklagten zu 4 bis 6 und 8) eines Verfahrens in der Bundesrepublik Deutschland zum Kommunizieren einer Identität einer Verwürfelungscodegruppe für ein übertragenes Signal in einem Digitalkommunikationssystem, in dem Signale durch jeweilige Verwürfelungscodes verwürfelt sind und die Verwürfelungscodes jeweiligen Verwürfelungscodegruppen zugewiesen sind, wenn dieses die Schritte enthält: Bereitstellen einer Vielzahl von S-Hadamard-Codewörtern; und Codieren der Identität der Verwürfelungscodegruppe in dem übertragenen Signal als eine codewortmäßig zyklisch unterschiedliche Sequenz der S-Hadamard-Codewörter,

(Anspruch 27 des Klagepatents B – EP 1 105 991 B1)

insbesondere wenn

die Sequenz von S-Hadamard-Codewörtern einem Rahmen des übertragenen Signals entspricht;

(Unteranspruch 28 des Klagepatents B – EP 1 105 991 B1)

5.   Anbieten, Inverkehrbringen oder Einfuhr oder Besitz zu den genannten Zwecken (bzgl. der Beklagten zu 4 bis 6 und 8) von Signalgeneratoren in Funksendern, wenn diese einen Spezialsequenz-Generator, der eine Spezialsequenz mit komplexen Elementen konstanter Größe produziert; einen S-Hadamard-Sequenz-Generator, der die Spezialsequenz empfängt, und der wenigstens eine S-Hadmard-Sequenz auf der Grundlage der Spezialsequenz produziert, wobei S-Hadamard-Sequenzen jeweiligen Mitgliedern eines Satzes von Walsh-Hadamard-Sequenzen entsprechen, die positionsmäßig mit der Spezi-

alsequenz verwürfelt sind; einen Identitätsgenerator, der eine Verwürfelungs-codegruppen-Identität produziert; einen Selektor, der eine durch den S-Hadamard-Sequenz-Generator produzierte S-Hadamard-Sequenz auf der Grundlage der Verwürfelungscodegruppen-Identität auswählt; einen Kombinierer, der die durch den Selektor ausgewählte S-Hadamard-Sequenz mit einem Informationssignal kombiniert, mit Bildern eines kombinierten Signals umfassen;

(Anspruch 29 des Klagepatents B – EP 1 105 991 B1)

insbesondere wenn

der Spezialsequenz-Generator einen Speicher enthält, von welchem die Spezialsequenz abgerufen ist;

(Unteranspruch 30 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

der S-Hadamard-Sequenz-Generator einen Prozessor enthält, der rekursiv Walsh-Hadamard-Sequenzen erzeugt, und einen Multiplizierer, der Produkte der Spezialsequenz und von durch den Prozessor erzeugten Walsh-Hadamard-Sequenzen bildet;

(Unteranspruch 31 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

der S-Hadamard-Sequenz-Generator einen Speicher enthält, in dem Walsh-Hadamard-Sequenzen gespeichert sind, und einen Multiplizierer, der Produkte der Spezialsequenz und von, von dem Speicher abgerufenen, Walsh-Hadamard-Sequenzen bildet;

(Unteranspruch 32 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

der Identitätsgenerator einen Speicher enthält, von dem die Verwürfelungs-codegruppen-Identität abgerufen ist;

(Unteranspruch 33 des Klagepatents B – EP 1 105 991 B1)

6. Anbieten, Inverkehrbringen oder die Einfuhr oder der Besitz zu den genann-
ten Zwecken (bzgl. der Beklagten zu 1 bis 7 und 9) in der Bundesrepublik
Deutschland von Vorrichtungen zur Verwendung beim Bestimmen einer Ver-
würfelungscodegruppe für ein empfangenes Signal in einem Digitalkommuni-
kationssystem, in dem Signale durch jeweilige Verwürfelungscodes verwürfelt
sind, wobei die Verwürfelungscodes jeweiligen Verwürfelungsgruppen zuge-
wiesen sind, wobei die Identitäten der Verwürfelungscodegruppen in den Sig-
nalen durch jeweilige Codewörter codiert sind,

wenn die Vorrichtungen einen S-Hadamard-Codewort-Generator, der we-
nigstens ein S-Hadamard-Codewort auf der Grundlage einer Spezialsequenz
produziert, wobei S-Hadamard-Codewörter jeweiligen Mitgliedern eines Sat-
zes von Walsh-Hadamard-Sequenzen entsprechen, die positionsmäßig mit der
Spezialsequenz verwürfelt sind; und einen Dekorrelator, wobei der Dekorre-
lator wenigstens eine Korrelation des empfangenen Signals mit wenigstens ei-
nem durch den S-Hadamard-Codewort-Generator erzeugten S-Hadamard-
Codewort bildet, umfassen;

(Anspruch 34 des Klagepatents B – EP 1 105 991 B1)

insbesondere wenn

der S-Hadamard-Codewort-Generator einen Speicher enthält, von dem das
wenigstens eine S-Hadmard-Codewort abgerufen ist;

(Unteranspruch 35 des Klagepatents B – EP 1 105 991 B1)

und/oder wenn

der Dekorrelator einen Primärdekorrelator, der fortlaufende Korrelationen
des empfangenen Signals mit einer Vielzahl kürzerer Sequenzen bildet, die po-
sitionsmäßigen Multiplikationen der Spezialsequenz und einer Untersequenz
eines Mitglieds des Satzes von Walsh-Hadamard-Sequenzen entsprechen; und
einen Sekundärdekorrelator, der Korrelationen der durch den Primärdekor-
relator gebildeten fortlaufenden Korrelationen mit Mitglieder eines Satzes von
Walsh-Hadamard-Sequenzen bildet, der die Untersequenz enthält, umfasst;

(Unteranspruch 36 des Klagepatents B – EP 1 105 991 B1)

und/ oder wenn

der Sekundärdekorrelator ein Prozessor für eine schnelle Walsh-Transformation ist;

(Unteranspruch 37 des Klagepatents B – EP 1 105 991 B1)

wobei die Auskunft in Form einer geordneten Aufstellung gegenüber der Klägerin zu erfolgen hat, und zwar, soweit zutreffend, unter Angabe

a)    der erhaltenen oder bestellten Erzeugnisse, aufgeschlüsselt nach der jeweiligen Menge, Zeiten, Preise, sowie der Namen und Anschriften der Hersteller, Lieferanten und anderer Vorbesitzer;

b)    der einzelnen Lieferungen, aufgeschlüsselt nach Liefermengen, -zeiten und -preisen und der jeweiligen Typenbezeichnungen, sowie den Namen und Anschriften der Abnehmer;

c)    der einzelnen Angebote, aufgeschlüsselt nach Angebotsmengen, -zeiten und -preisen, sowie den Namen und Anschriften der Angebotsempfänger;

d)    der betriebenen Werbung, aufgeschlüsselt nach Werbeträgern, deren Auflagenhöhe, Verbreitungszeitraum und Verbreitungsgebiet, im Falle von Internet-Werbung der Domain, der Suchmaschinen und anderer Marketingwerkzeuge, mit Hilfe derer die betroffenen Webseiten einzeln oder gemeinsam registriert wurden, der Zugriffszahlen und der Schaltungszeiträume jeder Kampagne;

e)    der nach den einzelnen Kostenfaktoren aufgeschlüsselten Gestehungskosten und des erzielten Gewinns, einschließlich der Umsätze, die mit Zubehör erzielt wurden;

wobei die Beklagten die Richtigkeit ihrer Angaben nach a) bis c) und e) belegen müssen, indem sie Belegkopien wie Rechnungen und Lieferscheine (oder andere Lieferdokumente) vorlegen;

wobei den jeweiligen Beklagten vorbehalten bleibt, die Namen und Anschriften der nichtgewerblichen Abnehmner und Angebotsempfänger statt der Klägerin einem von der Klägerin zu bezeichnenden, ihr gegenüber zur Verschwiegenheit verpflichteten vereidigten Wirtschaftsprüfer mitzuteilen, sofern die Beklagten dessen Kosten tragen und ihn ermächtigen und verpflichten, der Klägerin auf konkrete Anfrage mitzuteilen, ob ein bestimmter Abnehmer oder Angebotsempfänger in der Aufstellung enthalten ist;

B-II.   Es wird festgestellt, dass die Beklagten jeweils verpflichtet sind, der Klägerin sämtliche Schäden zu ersetzen, die ihr durch die unter B-1. bezeichneten Verletzungshandlungen seit dem 4. August 2007 entstanden sind und noch entstehen werden;

B-III.  Die Beklagten werden verurteilt, der Klägerin zu erlauben, eine Zusammenfassung des Urteils unter Nennung der jeweiligen Beklagten auf Kosten der Beklagten in drei aufeinander folgenden Ausgaben des Magazins *Spiegel* zu veröffentlichen;

B-IV.   Die Beklagten tragen die Kosten des Rechtsstreits;

B-V.    Die Klägerin darf als Sicherheit jede unbedingte, unbegrenzte, garantierte Bankbürgschaft einer deutschen Bank oder öffentlichen Sparkasse, die als Zoll- und Steuerbürge anerkannt ist, leisten.

**C-I.** Die Beklagten zu 1 bis 7 und 9 werden verurteilt, der Klägerin Auskunft über den Umfang der folgenden von ihnen begangenen Verletzungshandlungen, jeweils seit dem 12. Dezember 2008, zu erteilen:

    1.   Anwenden und Anbieten zur Anwendung eines Verfahrens in der Bundesrepublik Deutschland zum Transportieren von Messinformation von einem Endgerät in einem ersten Kommunikationssystem an ein zweites Kommunikationssystem,

    wenn dieses durch die Schritte Umwandeln einer Vielzahl von mit dem ersten Kommunikationssystem assoziierten Downlink-Messwerten in eine Vielzahl von Downlink-Messwerten für das zweite Kommunikationssystem; Vergleichen der umgewandelten Vielzahl von Downlink-Messwerten mit mindestens einem Schwellenmesswert; und falls mindestens einer der umgewandelten Vielzahl von Downlink-Messwerten einen vorbestimmten Schwellenmesswert übersteigt, den mindestens einen der umgewandelten Vielzahl von Downlink-Messwerten auf einem Steuerkanal an einen Steuerknoten im zweiten Kommunikationssystem senden, gekennzeichnet ist;

    (Anspruch 1 des Klagepatents C – EP 1 230 818 B1)

    insbesondere wenn

    das erste Kommunikationssystem ein UMTS umfasst;

    (Unteranspruch 2 des Klagepatents C – EP 1 230 818 B1)

    und/oder wenn

    das zweite Kommunikationssystem ein GSM umfasst;

    (Unteranspruch 3 des Klagepatents C – EP 1 230 818 B1)

    und/oder wenn

    die Vielzahl von mit dem ersten Kommunikationssystem assoziierten Downlink-Messwerten eine Vielzahl von $E_c/I_0$-Werten umfasst;

    (Unteranspruch 4 des Klagepatents C – EP 1 230 818 B1)

und/oder wenn

die Vielzahl von mit dem ersten Kommunikationssystem assoziierten Down-link-Messwerten eine Vielzahl von RSCP (Received Signal Code Power)-Werten umfasst;

(Unteranspruch 5 des Klagepatents C – EP 1 230 818 B1)

und/oder wenn

die Vielzahl von mit dem zweiten Kommunikationssystem assoziierten Down-link-Messwerten eine Vielzahl von Signalstärkewerten umfasst;

(Unteranspruch 6 des Klagepatents C – EP 1 230 818 B1)

und/oder wenn

der Steuerkanal einen Steuerkanal umfasst, der in einer "non-stealing" Betriebsweise betriebsfähig ist;

(Unteranspruch 7 des Klagepatents C – EP 1 230 818 B1)

und/oder wenn

der Steuerkanal einen SACCH (Slow Associated Control Channel) umfasst;

(Unteranspruch 8 des Klagepatents C – EP 1 230 818 B1)


2.   Anbieten, Inverkehrbringen oder die Einfuhr oder der Besitz zu den genann-ten Zwecken eines mobilen Endgeräts in der Bundesrepublik Deutschland zur Verwendung beim Transport von Messinformation von einem ersten Kom-munikationssystem an ein zweites Kommunikationssystem,
welches durch ein Mittel zum Umwandeln einer Vielzahl von mit dem ersten Kommunikationssystem assoziierten Downlink-Messwerten in eine Vielzahl von Downlink-Messwerten für das zweite Kommunikationssystem; ein Mittel zum Vergleichen der umgewandelten Vielzahl von Downlink-Messwerten mit mindestens einem Schwellenmesswert; und ein Mittel zum Senden von min-destens einem der umgewandelten Vielzahl von Downlink-Messwerten auf ei-nem Steuerkanal an einen Knoten im zweiten Kommunikationssystem, falls

der mindestens eine der umgewandelten Vielzahl von Downlink-Messwerten einen vorbestimmten Schwellenmesswert übersteigt, gekennzeichnet ist;

(Anspruch 9 des Klagepatents C – EP 1 230 818 B1)

insbesondere wenn

das erste Kommunikationssystem ein UMTS umfasst;

(Unteranspruch 10 des Klagepatents C – EP 1 230 818 B1)

und/oder wenn

das zweite Kommunikationssystem ein GSM umfasst;

(Unteranspruch 11 des Klagepatents C – EP 1 230 818 B1)

und/oder wenn

die Vielzahl von mit dem ersten Kommunikationssystem assoziierten Down-link-Messwerten eine Vielzahl von $E_c/I_0$-Werten umfasst;

(Unteranspruch 12 des Klagepatents C – EP 1 230 818 B1)

und/oder wenn

die Vielzahl von mit dem ersten Kommunikationssystem assoziierten Down-link-Messwerten eine Vielzahl von RSCP (Received Signal Code Power)-Wer-ten umfasst;

(Unteranspruch 13 des Klagepatents C – EP 1 230 818 B1)

und/oder wenn

die Vielzahl von mit dem zweiten Kommunikationssystem assoziierten Down-link-Messwerten eine Vielzahl von Signalstärkewerten umfasst;

(Unteranspruch 14 des Klagepatents C – EP 1 230 818 B1)

und/oder wenn

der Steuerkanal einen Steuerkanal umfasst, der in einer "non-stealing" Betriebsweise betriebsfähig ist;

(Unteranspruch 15 des Klagepatents C – EP 1 230 818 B1)

und/oder wenn

der Steuerkanal einen SACCH (Slow Associated Control Channel) umfasst;

(Unteranspruch 16 des Klagepatents C – EP 1 230 818 B1)

wobei die Auskunft in Form einer geordneten Aufstellung gegenüber der Klägerin zu erfolgen hat, und zwar, soweit zutreffend, unter Angabe

a)   der erhaltenen oder bestellten Erzeugnisse, aufgeschlüsselt nach der jeweiligen Menge, Zeiten, Preise, sowie der Namen und Anschriften der Hersteller, Lieferanten und anderer Vorbesitzer;

b)   der einzelnen Lieferungen, aufgeschlüsselt nach Liefermengen, -zeiten und -preisen und der jeweiligen Typenbezeichnungen, sowie den Namen und Anschriften der Abnehmer;

c)   der einzelnen Angebote, aufgeschlüsselt nach Angebotsmengen, -zeiten und -preisen, sowie den Namen und Anschriften der Angebotsempfänger;

d)   der betriebenen Werbung, aufgeschlüsselt nach Werbeträgern, deren Auflagenhöhe, Verbreitungszeitraum und Verbreitungsgebiet, im Falle von Internet-Werbung der Domain, der Suchmaschinen und anderer Marketingwerkzeuge, mit Hilfe derer die betroffenen Webseiten einzeln oder gemeinsam registriert wurden, der Zugriffszahlen und der Schaltungszeiträume jeder Kampagne;

e)   der nach den einzelnen Kostenfaktoren aufgeschlüsselten Gestehungskosten und des erzielten Gewinns, einschließlich der Umsätze, die mit Zubehör erzielt wurden;

wobei die Beklagten zu 1 bis 7 und 9 die Richtigkeit ihrer Angaben nach a) bis c) und e) belegen müssen, indem sie Belegkopien wie Rechnungen und Lieferscheine (oder andere Lieferdokumente) vorlegen;

wobei den jeweiligen Beklagten vorbehalten bleibt, die Namen und Anschriften der nichtgewerblichen Abnehmer und Angebotsempfänger statt der Klägerin einem von der Klägerin zu bezeichnenden, ihr gegenüber zur Verschwiegenheit verpflichteten vereidigten Wirtschaftsprüfer mitzuteilen, sofern die Beklagten dessen Kosten tragen und ihn ermächtigen und verpflichten, der Klägerin auf konkrete Anfrage mitzuteilen, ob ein bestimmter Abnehmer oder Angebotsempfänger in der Aufstellung enthalten ist;

C-II.   Es wird festgestellt, dass die Beklagten zu 1 bis 7 und 9 jeweils verpflichtet sind, der Klägerin sämtliche Schäden zu ersetzen, die ihr durch die unter C-1. bezeichneten Verletzungshandlungen seit dem 12. Dezember 2008 entstanden sind und noch entstehen werden;

C-III.   Die Beklagten zu 1 bis 7 und 9 werden verurteilt, der Klägerin zu erlauben, eine Zusammenfassung des Urteils unter Nennung der jeweiligen Beklagten auf Kosten der Beklagten in drei aufeinander folgenden Ausgaben des Magazins *Spiegel* zu veröffentlichen;

C-IV.   Die Beklagten zu 1 bis 7 und 9 tragen die Kosten des Rechtsstreits;

C-V.   Die Klägerin darf als Sicherheit jede unbedingte, unbegrenzte, garantierte Bankbürgschaft einer deutschen Bank oder öffentlichen Sparkasse, die als Zoll- und Steuerbürge anerkannt ist,  leisten.

**D-I.** **Die Beklagten werden verurteilt, der Klägerin Auskunft über den Umfang der folgenden von ihnen begangenen Verletzungshandlungen, jeweils seit dem 22. Juni 2013, zu erteilen:**

1. Anwenden und Anbieten zur Anwendung eines Verfahrens in der Bundesrepublik Deutschland in einem ersten Knoten zum Anfordern eines Statusberichts von einem zweiten Knoten, wobei der erste Knoten und der zweite Knoten beide innerhalb eines drahtlosen Kommunikationsnetzes enthalten sind, der Statusbericht positive und/oder negative Bestätigung von Daten umfasst, die vom ersten Knoten gesendet werden und die durch den zweiten Knoten empfangen werden sollen,

   wenn das Verfahren sowohl den Schritt Senden einer Folge von Dateneinheiten oder Dateneinheitssegmenten, die durch den zweiten Knoten empfangen werden sollen, als auch die Schritte Zählen der Anzahl von gesendeten Dateneinheiten und der Anzahl von gesendeten Datenbytes der gesendeten Dateneinheiten, und Anfordern eines Statusberichts vom zweiten Knoten, wenn die gezählte Anzahl von gesendeten Dateneinheiten einen ersten vordefinierten Wert überschreitet oder diesem entspricht, oder die gezählte Anzahl von gesendeten Datenbytes der gesendeten Dateneinheiten einen zweiten vordefinierten Wert überschreitet oder diesem entspricht, umfasst;

   (Anspruch 1 des Klagepatents D – EP 2 229 744 B1)

   insbesondere wenn

   der erste vordefinierte Wert und der zweite vordefinierte Wert durch eine höhere Schicht, z. B. der Funkbetriebsmittelsteuerung, „RRC", konfiguriert und von ihr erhalten wurden;

   (Unteranspruch 3 des Klagepatents D – EP 2 229 744 B1)

   und/oder wenn

   der Schritt des Zählens ein Inkrementieren des ersten Zählers gemäß der gesendeten Menge von Dateneinheiten und Inkrementieren des zweiten Zählers gemäß der gesendeten Menge von Datenbytes der gesendeten Dateneinheiten

umfasst, und wobei der Schritt des Anforderns eines Statusberichts vom zweiten Knoten ausgeführt wird, wenn der erste vordefinierte Wert durch den ersten Zähler erreicht oder überschritten wird oder wenn der zweite vordefinierte Wert durch den zweiten Zähler erreicht oder überschritten wird;

(Unteranspruch 4 des Klagepatents D – EP 2 229 744 B1)

und/oder wenn

das Verfahren auch die Schritte Voreinstellen des ersten Zählers auf null, und Voreinstellen des zweiten Zählers auf null umfasst;

(Unteranspruch 5 des Klagepatents D – EP 2 229 744 B1)

und/oder wenn

das Verfahren auch die Schritte Rücksetzen des ersten Zählers auf null, und Rücksetzen des zweiten Zählers auf null umfasst;

(Unteranspruch 6 des Klagepatents D – EP 2 229 744 B1)

und/oder wenn

der Schritt des Rücksetzens des ersten Zählers und des zweiten Zählers ausgeführt wird, wenn der erste vordefinierte Wert durch den ersten Zähler erreicht oder überschritten wird oder wenn der zweite vordefinierte Wert durch den zweiten Zähler erreicht oder überschritten wird;

(Unteranspruch 9 des Klagepatents D – EP 2 229 744 B1)

und/oder wenn

es sich bei dem ersten Knoten um eine Benutzereinrichtung handelt;

(Unteranspruch 10 des Klagepatents D – EP 2 229 744 B1)

2. Anbieten, Inverkehrbringen oder die Einfuhr oder der Besitz zu den genannten Zwecken eines ersten Knotens in der Bundesrepublik Deutschland, umfassend eine Anordnung zum Anfordern eines Statusberichts von einem zweiten Knoten, wobei der erste Knoten und der zweite Knoten beide für ein drahtloses Kommunikationsnetz verwendet werden, der Statusbericht positive und/oder negative Bestätigung von Daten umfasst, die vom ersten Knoten gesendet werden und die durch den zweiten Knoten empfangen werden sollen,

wenn die Anordnung einen Sender, der so ausgelegt ist, dass er eine Folge von Dateneinheiten oder Dateneinheitssegmenten sendet, die durch den zweiten Knoten empfangen werden sollen, ferner einen Zählmechanismus, der so ausgelegt ist, dass er die Anzahl von gesendeten Dateneinheiten und die Anzahl von gesendeten Datenbytes der gesendeten Dateneinheiten zählt, und eine Anforderungseinheit, die so ausgelegt ist, dass sie einen Statusberichts vom zweiten Knoten anfordert, wenn die gezählte Anzahl von gesendeten Dateneinheiten einen ersten vordefinierten Wert überschreitet oder diesem entspricht, oder die gezählte Anzahl von gesendeten Datenbytes der gesendeten Dateneinheiten einen zweiten vordefinierten Wert überschreitet oder diesem entspricht, umfasst;

(Anspruch 12 des Klagepatents D – EP 2 229 744 B1)

insbesondere wenn

es sich bei dem ersten Knoten um eine Benutzereinrichtung handelt;

(Unteranspruch 13 des Klagepatents D – EP 2 229 744 B1)


wobei die Auskunft in Form einer geordneten Aufstellung gegenüber der Klägerin zu erfolgen hat, und zwar, soweit zutreffend, unter Angabe

    a) der erhaltenen oder bestellten Erzeugnisse, aufgeschlüsselt nach der jeweiligen Menge, Zeiten, Preise, sowie der Namen und Anschriften der Hersteller, Lieferanten und anderer Vorbesitzer;

    b) der einzelnen Lieferungen, aufgeschlüsselt nach Liefermengen, -zeiten und -preisen und der jeweiligen Typenbezeichnungen, sowie den Namen und Anschriften der Abnehmer;

    c)   der einzelnen Angebote, aufgeschlüsselt nach Angebotsmengen, -zeiten und -preisen, sowie den Namen und Anschriften der Angebotsempfänger;

    d)   der betriebenen Werbung, aufgeschlüsselt nach Werbeträgern, deren Auflagenhöhe, Verbreitungszeitraum und Verbreitungsgebiet, im Falle von Internet-Werbung der Domain, der Suchmaschinen und anderer Marketingwerkzeuge, mit Hilfe derer die betroffenen Webseiten einzeln oder gemeinsam registriert wurden, der Zugriffszahlen und der Schaltungszeiträume jeder Kampagne;

    e)   der nach den einzelnen Kostenfaktoren aufgeschlüsselten Gestehungskosten und des erzielten Gewinns, einschließlich der Umsätze, die mit Zubehör erzielt wurden;

wobei die Beklagten die Richtigkeit ihrer Angaben nach a) bis c) und e) belegen müssen, indem sie Belegkopien wie Rechnungen und Lieferscheine (oder andere Lieferdokumente) vorlegen;

wobei den jeweiligen Beklagten vorbehalten bleibt, die Namen und Anschriften der nichtgewerblichen Abnehmer und Angebotsempfänger statt der Klägerin einem von der Klägerin zu bezeichnenden, ihr gegenüber zur Verschwiegenheit verpflichteten vereidigten Wirtschaftsprüfer mitzuteilen, sofern die Beklagten dessen Kosten tragen und ihn ermächtigen und verpflichten, der Klägerin auf konkrete Anfrage mitzuteilen, ob ein bestimmter Abnehmer oder Angebotsempfänger in der Aufstellung enthalten ist;

D-II.   Es wird festgestellt, dass die Beklagten jeweils verpflichtet sind, der Klägerin sämtliche Schäden zu ersetzen, die ihr durch die unter D-1. bezeichneten Verletzungshandlungen seit dem 22. Juni 2013 entstanden sind und noch entstehen werden;

**D-III.** Die Beklagten werden verurteilt, der Klägerin zu erlauben, eine Zusammenfassung des Urteils unter Nennung der jeweiligen Beklagten auf Kosten der Beklagten in drei aufeinander folgenden Ausgaben des Magazins *Spiegel* zu veröffentlichen;

**D-IV.** Die Beklagten tragen die Kosten des Rechtsstreits;

**D-V.** Die Klägerin darf als Sicherheit jede unbedingte, unbegrenzte, garantierte Bankbürgschaft einer deutschen Bank oder öffentlichen Sparkasse, die als Zoll- und Steuerbürge anerkannt ist, leisten.

**ES-I.** Die Beklagten werden verurteilt, der Klägerin Auskunft über den Umfang der folgenden von ihnen begangenen Verletzungshandlungen, jeweils seit dem 13. Dezember 2013, zu erteilen:

1. Anwenden und Anbieten zur Anwendung (bzgl. der Beklagten zu 1 bis 7 und 9) eines Verfahrens in der Bundesrepublik Deutschland zum Betreiben eines mobilen Endgeräts in einem drahtlosen Telekommunikationssystem, das eine Mehrzahl von Kommunikationszellen definiert,

   wenn das Verfahren Kommunizieren mit einer Funkbasisstation, die eine erste Kommunikationszelle versorgt; Bestimmen mindestens eines Betriebsparameters für eine zweite Kommunikationszelle; Erkennen nichteindeutiger Kennungsinformationen für die zweite Kommunikationszelle; Melden von Parameterinformationen bezüglich des oder jedes Betriebsparameters für die zweite Kommunikationszelle und Melden der erkannten nichteindeutigen Kennungsinformationen an die Funkbasisstation der ersten Kommunikationszelle, Empfangen einer Anweisung von der Funkbasisstation der ersten Kommunikationszelle; Erkennen eindeutiger Zellenkennungsinformationen für die zweite Kommunikationszelle nach Empfang der Anweisung; und Melden der erkannten eindeutigen Zellenkennungsinformationen für die zweite Kommunikationszelle an die Funkbasisstation der ersten Kommunikationszelle umfasst;

   **(Anspruch 1 des Klagepatents ES – EP 2 119 287 B1)**

   insbesondere wenn

   der mindestens eine Betriebsparameter einen Codierungscode, eine Signalstärkemessung, eine Signalgütemessung und/oder Taktinformationen umfasst;

   **(Unteranspruch 2 des Klagepatents ES – EP 2 119 287 B1)**

und/oder wenn

das Verfahren ferner das Empfangen einer Liste von Kommunikationszellen von der Funkbasisstation der ersten Kommunikationszelle, wobei die Liste die zweite Kommunikationszelle und eine Mehrheit weiterer Kommunikationszellen enthält, umfasst;

(Unteranspruch 3 des Klagepatents ES – EP 2 119 287 B1)

und/oder wenn

die zweite Kommunikationszelle der ersten Kommunikationszelle benachbart ist;

(Unteranspruch 4 des Klagepatents ES – EP 2 119 287 B1)


2.   Anbieten, Inverkehrbringen oder die Einfuhr oder der Besitz zu den genannten Zwecken (bzgl. der Beklagten zu 1 bis 7 und 9) eines mobilen Endgerätes in der Bundesrepublik Deutschland zur Verwendung in einem drahtlosen Telekommunikationssystem, das eine Mehrzahl von Kommunikationszellen definiert, wobei das Endgerät Mittel zum Ausführen der Schritte eines Verfahrens nach einem beliebigen der vorhergehenden Ansprüche umfasst;

(Anspruch 6 des Klagepatents ES – EP 2 119 287 B1)

insbesondere wenn

das mobile Endgerät eine Steuerung zum Kommunizieren mit einer Funkbasisstation, die eine erste Kommunikationszelle versorgt, umfasst, wobei die Steuerung betreibbar ist zum Bestimmen mindestens eines Betriebsparameters für eine zweite Kommunikationszelle; Erkennen nichteindeutiger Kennungsinformationen für die zweite Kommunikationszelle; Melden von Parameterinformationen bezüglich des oder jedes Betriebsparameters für die zweite Kommunikationszelle und Melden der nichteindeutigen Kennungsinformationen an die Funkbasisstation der ersten Kommunikationszelle; Empfangen einer Anweisung von der Funkbasisstation der ersten

Kommunikationszelle, wenn die erkannten nichteindeutigen Kennungsinformationen nicht in einer Nachbarzellenmenge der ersten Kommunikationszelle enthalten sind; Erkennen von eindeutigen Zellenkennungsinformationen für die zweite Kommunikationszelle nach Empfang der Anweisung, und Melden der erkannten eindeutigen Zellenkennungsinformationen für die zweite Kommunikationszelle an die Funkbasisstation der ersten Kommunikationszelle;

(Unteranspruch 7 des Klagepatents ES – EP 2 119 287 B1)

und/oder wenn

der mindestens eine Betriebsparameter einen Verwürfelungscode, eine Signalstärkemessung, eine Signalgütemessung und/oder Taktinformationen umfasst;

(Unteranspruch 8 des Klagepatents ES – EP 2 119 287 B1)

und/oder wenn

die Steuerung zum Empfangen einer Liste von Kommunikationszellen von der Funkbasisstation der ersten Kommunikationszelle betreibbar ist, wobei die Liste die zweite Kommunikationszelle und eine Mehrzahl weiterer Kommunikationszellen enthält;

(Unteranspruch 9 des Klagepatents ES – EP 2 119 287 B1)

und/oder wenn

die zweite Kommunikationszelle der ersten Kommunikationszelle benachbart ist;

(Unteranspruch 10 des Klagepatents ES – EP 2 119 287 B1)

und/oder wenn

die Steuerung betreibbar ist zum Erkennen nichteindeutiger Zellenkennungsinformationen für eine Mehrzahl weiterer Kommunikationszellen; Melden von Parameterinformationen bezüglich des oder jedes Betriebsparameters für die Mehrzahl weiterer Kommunikationszellen und Melden der nichteindeuti-

gen Kennungsinformationen an die Funkbasisstation der ersten Kommunika-
tionszelle; Empfangen einer Anweisung von der Funkbasisstation der ersten
Kommunikationszelle, wenn die erkannten nichteindeutigen Kennungsinfor-
mationen nicht in einer Nachbarzellenmenge der ersten Kommunikationszelle
enthalten sind; Erkennen eindeutiger Zellenkennungsinformationen für die
Mehrzahl weiterer Kommunikationszellen nach Empfang der Anweisung;
und Melden der erkannten eindeutigen Zellenkennungsinformationen für die
Mehrzahl weiterer Kommunikationszellen an die Funkbasisstation der ersten
Kommunikationszelle;

(Unteranspruch 11 des Klagepatents ES – EP 2 119 287 B1)

3.   Anwenden und Anbieten zur Anwendung (bzgl. der Beklagten zu 4 bis 6 und
     8) eines Verfahrens in der Bundesrepublik Deutschland zum Regeln der Res-
     sourcen in einem drahtlosen Telekommunikationssystem, das eine Mehrzahl
     von Kommunikationszellen definiert,

wenn das Verfahren Kommunizieren mit einem in einer ersten Kommunika-
tionszelle betriebenen mobilen Endgerät; Empfangen nichteindeutiger Ken-
nungsinformationen und Parameterinformationen bezüglich des mindestens
einen Betriebsparameters für eine zweite Kommunikationszelle von dem mo-
bilen Endgerät; Definieren einer Nachbarzellenliste für das mobile Endgerät,
wobei die Nachbarzellenliste die zweite Kommunikationszelle enthält, Bestim-
men aus den nichteindeutigen Kennungsinformationen, ob eindeutige Zellen-
erkennungsinformationen für die zweite Kommunikationszelle erforderlich
sind, und wenn solche eindeutigen Kennungsinformationen erforderlich sind,
Übertragen einer Anweisung an das mobile Endgerät; Empfangen eindeutiger
Zellenkennungsinformationen bezüglich der zweiten Kommunikationszelle
von dem mobilen Endgerät; und Definieren einer für das Handover infrage
kommenden Zellenliste für das mobile Endgerät, wobei die für das Handover
infrage kommende Zellenliste die zweite Kommunikationszelle enthält, um-
fasst;

(Anspruch 12 des Klagepatents ES – EP 2 119 287 B1)

insbesondere wenn

der mindestens eine Betriebsparameter einen Verwürfelungscode, eine Signal-
stärkemessung, eine Signalgütemessung und/oder Taktinformationen um-
fasst;

(Unteranspruch 13 des Klagepatents ES – EP 2 119 287 B1)

und/oder wenn

die zweite Kommunikationszelle der ersten Kommunikationszelle benachbart
ist;

(Unteranspruch 14 des Klagepatents ES – EP 2 119 287 B1)

und/oder wenn

das Verfahren ferner Empfangen nichteindeutiger Zellenkennungsinformati-
onen für eine Mehrzahl weiterer Kommunikationszellen von dem mobilen
Endgerät; Bestimmen aus den nichteindeutigen Kennungsinformationen, ob
eindeutige Zellenkennungsinformationen für die Mehrzahl weiterer Kommu-
nikationszellen erforderlich sind, und wenn solche eindeutigen Kennungsinfor-
mationen erforderlich sind, Übertragen einer Anweisung an das mobile
Endgerät; Empfangen eindeutiger Zellenkennungsinformationen bezüglich
der Mehrzahl weiterer Kommunikationszellen von dem mobilen Endgerät;
und Definieren einer für das Handover infrage kommenden Zellenliste für das
mobile Endgerät, wobei die für das Handover infrage kommende Zellenliste
die Mehrzahl weiterer Kommunikationszellen enthält, umfasst;

(Unteranspruch 15 des Klagepatents ES – EP 2 119 287 B1)


4.  Anbieten, Inverkehrbringen oder die Einfuhr oder der Besitz zu den genann-
    ten Zwecken (bzgl. der Beklagten zu 4 bis 6 und 8) eines drahtlosen Telekom-
    munikationsnetzes in der Bundesrepublik Deutschland, das eine Mehrzahl
    von Kommunikationszellen definiert, wobei das Netz Netzressourcen umfasst,
    die betreibbar sind zum Kommunizieren mit einem in einer ersten Kommu-
    nikationszelle betriebenen mobilen Endgerät; Empfangen nichteindeutiger

Kennungsinformationen und Parameterinformationen bezüglich eines Betriebsparameters für die zweite Kommunikationszelle von dem mobilen Endgerät; Definieren einer Nachbarzellenliste für das mobile Endgerät, wobei die Nachbarzellenliste die zweite Kommunikationszelle enthält; Bestimmen aus den nichteindeutigen Kennungsinformationen, ob eindeutige Zellenkennungsinformationen für die zweite Kommunikationszelle erforderlich sind, und wenn solche eindeutigen Kennungsinformationen erforderlich sind, Übertragen einer Anweisung an das mobile Endgerät; Empfangen eindeutiger Zellenkennungsinformationen bezüglich der zweiten Kommunikationszelle von dem mobilen Endgerät; und Definieren einer für das Handover infrage kommenden Zellenliste für das mobile Endgerät, wobei die für das Handover infrage kommende Zellenliste die zweite Kommunikationszelle enthält;

(Anspruch 16 des Klagepatents ES – EP 2 119 287 B1)

insbesondere wenn

der mindestens eine Betriebsparameter einen Verwürfelungscode, eine Signalstärkemessung, eine Signalgütemessung und/oder Taktinformationen umfasst;

(Unteranspruch 17 des Klagepatents ES – EP 2 119 287 B1)

und/oder wenn

die zweite Kommunikationszelle der ersten Kommunikationszelle benachbart ist;

(Unteranspruch 18 des Klagepatents ES – EP 2 119 287 B1)

und/oder wenn

die Netzressourcen betreibbar sind zum Empfangen nichteindeutiger Zellenkennungsinformationen für eine Mehrzahl weiterer Kommunikationszellen von dem mobilen Endgerät; Bestimmen aus den nichteindeutigen Kennungsinformationen, ob eindeutige Zellenkennungsinformationen für die Mehrzahl weiterer Kommunikationszellen erforderlich sind, und wenn solche eindeutigen Kennungsinformationen erforderlich sind, Übertragen einer Anweisung

an das mobile Endgerät; Empfangen eindeutiger Zellenkennungsinformationen bezüglich der Mehrzahl weiterer Kommunikationszellen von dem mobilen Endgerät; und Definieren einer für das Handover infrage kommenden Zellenliste für das mobile Endgerät, wobei die für das Handover infrage kommende Zellenliste die Mehrzahl weiterer Kommunikationszellen enthält;

(Unteranspruch 19 des Klagepatents ES – EP 2 119 287 B1)

und/oder wenn

die Netzressourcen durch eine Funkbasisstation bereitgestellt werden;

(Unteranspruch 20 des Klagepatents ES – EP 2 119 287 B1)

wobei die Auskunft in Form einer geordneten Aufstellung gegenüber der Klägerin zu erfolgen hat, und zwar, soweit zutreffend, unter Angabe

a) der erhaltenen oder bestellten Erzeugnisse, aufgeschlüsselt nach der jeweiligen Menge, Zeiten, Preise, sowie der Namen und Anschriften der Hersteller, Lieferanten und anderer Vorbesitzer;

b) der einzelnen Lieferungen, aufgeschlüsselt nach Liefermengen, -zeiten und -preisen und der jeweiligen Typenbezeichnungen, sowie den Namen und Anschriften der Abnehmer;

c) der einzelnen Angebote, aufgeschlüsselt nach Angebotsmengen, -zeiten und -preisen, sowie den Namen und Anschriften der Angebotsempfänger;

d) der betriebenen Werbung, aufgeschlüsselt nach Werbeträgern, deren Auflagenhöhe, Verbreitungszeitraum und Verbreitungsgebiet, im Falle von Internet-Werbung der Domain, der Suchmaschinen und anderer Marketingwerkzeuge, mit Hilfe derer die betroffenen Webseiten einzeln oder gemeinsam registriert wurden, der Zugriffszahlen und der Schaltungszeiträume jeder Kampagne;

    e)  der nach den einzelnen Kostenfaktoren aufgeschlüsselten Gestehungs-
kosten und des erzielten Gewinns, einschließlich der Umsätze, die mit
Zubehör erzielt wurden;

wobei die Beklagten die Richtigkeit ihrer Angaben nach a) bis c) und e) belegen
müssen, indem sie Belegkopien wie Rechnungen und Lieferscheine (oder andere
Lieferdokumente) vorlegen;

wobei den jeweiligen Beklagten vorbehalten bleibt, die Namen und Anschriften
der nichtgewerblichen Abnehmer und Angebotsempfänger statt der Klägerin ei-
nem von der Klägerin zu bezeichnenden, ihr gegenüber zur Verschwiegenheit ver-
pflichteten vereidigten Wirtschaftsprüfer mitzuteilen, sofern die Beklagten dessen
Kosten tragen und ihn ermächtigen und verpflichten, der Klägerin auf konkrete
Anfrage mitzuteilen, ob ein bestimmter Abnehmer oder Angebotsempfänger in
der Aufstellung enthalten ist;

ES-II. Es wird festgestellt, dass die Beklagten jeweils verpflichtet sind, der Klägerin
sämtliche Schäden zu ersetzen, die ihr durch die unter ES-1. bezeichneten Verlet-
zungshandlungen seit dem 13. Dezember 2013 entstanden sind und noch entstehen
werden;

ES-III. Die Beklagten werden verurteilt, der Klägerin zu erlauben, eine Zusammenfas-
sung des Urteils unter Nennung der jeweiligen Beklagten auf Kosten der Beklag-
ten in drei aufeinander folgenden Ausgaben des Magazins *Spiegel* zu
veröffentlichen;

ES-IV. Die Beklagten tragen die Kosten des Rechtsstreits;

Rechtsanwaltskanzlei Grzimek
Klageschrift vom 10.03.2014

Seite 34

**ES-V. Die Klägerin darf als Sicherheit jede unbedingte, unbegrenzte, garantierte Bankbürgschaft einer deutschen Bank oder öffentlichen Sparkasse, die als Zoll- und Steuerbürge anerkannt ist, leisten.**

**ET-I.   Die Beklagten werden verurteilt, der Klägerin Auskunft über den Umfang der folgenden von ihnen begangenen Verletzungshandlungen, jeweils seit dem 18. Januar 2014, zu erteilen:**

1.   **Anwenden und Anbieten zur Anwendung (bzgl. der Beklagten zu 1 bis 7 und 9) eines Verfahrens in der Bundesrepublik Deutschland zum Betreiben eines mobilen Endgeräts in einem drahtlosen Telekommunikationssystem, das eine Mehrzahl von Kommunikationszellen definiert, in welchem eine nichteindeutige Zellenkennung und eine eindeutige Zellenkennung übertragen werden, wenn das Verfahren Kommunizieren mit einer Funkbasisstation, die eine erste Kommunikationszelle versorgt; Empfangen einer Anforderung von der Funkbasisstation zum Abrufen der eindeutigen Zellenkennung einer zweiten Kommunikationszelle unter der Mehrzahl von Kommunikationszellen; Abrufen der eindeutigen Zellenkennung der zweiten Kommunikationszelle; und Melden der eindeutigen Zellenkennung der zweiten Kommunikationszelle an die Funkbasisstation der ersten Kommunikationszelle umfasst;**

     **(Anspruch 1 des Klagepatents ET – EP 2 485 514 B1)**

     **insbesondere wenn**

     **dem Schritt des Empfangens einer Anforderung die Schritte des Bestimmens der nichteindeutigen Zellenkennung der zweiten Kommunikationszelle und Meldens der nichteindeutigen Zellenkennung der zweiten Kommunikationszelle an die Funkbasisstation, die die erste Kommunikationszelle versorgt, vorangeht;**

     **(Unteranspruch 2 des Klagepatents ET – EP 2 485 514 B1)**

     **und/oder wenn**

     **mit der nichteindeutigen Zellenkennung der zweiten Kommunikationszelle wie gemeldet mindestens ein Betriebsparameter der zweiten Kommunikationszelle umfassend einen oder mehrere Parameter einer Signalstärkemessung, einer Signalgütemessung und Taktinformation verknüpft ist;**

     **(Unteranspruch 3 des Klagepatents ET – EP 2 485 514 B1)**

und/oder wenn

das Abrufen und das Melden der eindeutigen Zellenkennung als Reaktion auf den Empfang der Anforderung von der Funkbasisstation der ersten Kommunikationszelle durchgeführt werden;

(Unteranspruch 4 des Klagepatents ET – EP 2 485 514 B1)

und/oder wenn

die zweite Kommunikationszelle der ersten Kommunikationszelle benachbart ist;

(Unteranspruch 5 des Klagepatents ET – EP 2 485 514 B1)


2.   Anbieten, Inverkehrbringen oder die Einfuhr oder der Besitz zu den genannten Zwecken (bzgl. der Beklagten zu 1 bis 7 und 9) eines mobilen Endgeräts in der Bundesrepublik Deutschland zur Verwendung in einem drahtlosen Telekommunikationssystem, das eine Mehrzahl von Kommunikationszellen umfasst, in welchem eine nichteindeutige Zellenkennung und eine eindeutige Zellenkennung übertragen werden, wenn das Endgerät eine Steuerung für die Kommunikation mit einer Funkbasisstation umfasst, die eine erste Kommunikationszelle versorgt, wobei die Steuerung als Reaktion auf einen Empfang einer Anweisung von der Funkbasisstation der ersten Kommunikationszelle betreibbar ist zum Erkennen eindeutiger Zellenkennungsinformationen für eine zweite Kommunikationszelle und Melden der eindeutigen Zellenkennungsinformationen für die zweite Kommunikationszelle an die Funkbasisstation der ersten Kommunikationszelle;

(Anspruch 6 des Klagepatents ET – EP 2 485 514 B1)

insbesondere wenn

das mobile Endgerät betreibbar ist zum Abrufen der nichteindeutigen Zellen-kennung der zweiten Kommunikationszelle und zum Melden der nichteindeu-tigen Zellenkennung der zweiten Kommunikationszelle an die Basisstation, die die erste Kommunikationszelle versorgt;

(Unteranspruch 7 des Klagepatents ET – EP 2 485 514 B1)

und/oder wenn

die zweite Kommunikationszelle der ersten Kommunikationszelle benachbart ist;

(Unteranspruch 9 des Klagepatents ET – EP 2 485 514 B1)

und/oder wenn

die Steuerung zum Erkennen eindeutiger Zellenkennungen für eine Mehrzahl weiterer Kommunikationszellen und zum Melden der eindeutigen Zellenken-nungen, wie sie erkannt worden sind, an die Funkbasisstation der ersten Kom-munikationszelle betreibbar ist;

(Unteranspruch 10 des Klagepatents ET – EP 2 485 514 B1)


3.   Anwenden und Anbieten zur Anwendung (bzgl. der Beklagten zu 4 bis 6 und 8) eines Verfahrens in der Bundesrepublik Deutschland zur Selbstkonfigura-tion von Zellennachbarn in einem drahtlosen Telekommunikationssystem, das eine Mehrzahl von Kommunikationszellen umfasst, in welchem eine nicht-eindeutige Zellenkennung und eine eindeutige Zellenkennung übertragen werden,

wenn das Verfahren Kommunizieren mit einem in einer ersten Kommunika-tionszelle betriebenen mobilen Endgerät; Anfordern des mobilen Endgeräts zum Abrufen der eindeutigen Zellenkennung einer zweiten Kommunikations-zelle; Empfangen der eindeutigen Zellenkennung der zweiten Kommunikati-onszelle   von   dem   mobilen   Endgerät;   und   Herstellen   einer

Transportverbindung durch Finden in einer Nachschlagetabelle einer Übereinstimmung der eindeutigen Zellenkennung der zweiten Kommunikationszelle mit einer Netzadresse der Funkbasisstation, die die zweite Kommunikationszelle versorgt, umfasst;

(Anspruch 11 des Klagepatents ET – EP 2 485 514 B1)

insbesondere wenn

dem Schritt des Anforderns der eindeutigen Zellenkennung der Schritt des Empfangens einer nichteindeutigen Zellenkennung der zweiten Kommunikationszelle von dem mobilen Endgerät vorangeht;

(Unteranspruch 12 des Klagepatents ET – EP 2 485 514 B1)

und/oder wenn

mit der nichteindeutigen Zellenkennung, wie sie empfangen worden ist, mindestens ein Betriebsparameter der zweiten Kommunikationszelle, umfassend einen oder mehrere Pararmeter einer Signalstärkemessung, einer Signalgütemessung und Taktinformationen, verknüpft ist;

(Unteranspruch 13 des Klagepatents ET – EP 2 485 514 B1)

und/oder wenn

die Netzadresse eine IP-Adresse ist;

(Unteranspruch 15 des Klagepatents ET – EP 2 485 514 B1)

und/oder wenn

das Verfahren durch eine Funkbasisstation durchgeführt wird;

(Unteranspruch 16 des Klagepatents ET – EP 2 485 514 B1)

4. **Anbieten, Inverkehrbringen oder die Einfuhr oder der Besitz zu den genannten Zwecken (bzgl. der Beklagten zu 4 bis 6 und 8) eines drahtlosen Telekommunikationsnetzes in der Bundesrepublik Deutschland, das eine Mehrzahl von Kommunikationszellen definiert, in welchem eine nichteindeutige Zellenkennung und eine eindeutige Zellenkennung übertragen werden,**

wenn das Netz Netzressourcen umfasst, die betreibbar sind zum Kommunizieren mit einem in einer ersten Kommunikationszelle betriebenen mobilen Endgerät; Stellen einer Anforderung an das mobile Endgerät zum Abrufen der eindeutigen Zellenkennung einer zweiten Kommunikationszelle; Empfangen einer eindeutigen Zellenkennung der zweiten Kommunikationszelle von dem mobilen Endgerät; Herstellen einer Transportverbindung durch Finden in einer Nachschlagetabelle einer Übereinstimmung der eindeutigen Zellenkennung der zweiten Kommunikationszelle mit einer Netzadresse der Funkbasisstation, die die zweite Kommunikationszelle versorgt;

(Anspruch 17 des Klagepatents ET – EP 2 485 514 B1)

insbesondere wenn

die Netzressourcen weiterhin betreibbar sind zum Empfangen der nichteindeutigen Zellenkennung der zweiten Kommunikationszelle von dem mobilen Endgerät;

(Unteranspruch 18 des Klagepatents ET – EP 2 485 514 B1)

und/oder wenn

die Netzressourcen betreibbar sind zum Empfangen eindeutiger Zellenkennungen für eine Mehrzahl weiterer Kommunikationszellen von dem mobilen Endgerät;

(Unteranspruch 20 des Klagepatents ET – EP 2 485 514 B1)

und/oder wenn

die Netzadresse eine IP-Adresse ist;

(Unteranspruch 21 des Klagepatents ET – EP 2 485 514 B1)

und/oder wenn

die Netzressourcen durch eine Funkbasisstation bereitgestellt werden;

(Unteranspruch 22 des Klagepatents ET – EP 2 485 514 B1)

wobei die Auskunft in Form einer geordneten Aufstellung gegenüber der Klägerin zu erfolgen hat, und zwar, soweit zutreffend, unter Angabe

    a) der erhaltenen oder bestellten Erzeugnisse, aufgeschlüsselt nach der jeweiligen Menge, Zeiten, Preise, sowie der Namen und Anschriften der Hersteller, Lieferanten und anderer Vorbesitzer;

    b) der einzelnen Lieferungen, aufgeschlüsselt nach Liefermengen, -zeiten und -preisen und der jeweiligen Typenbezeichnungen, sowie den Namen und Anschriften der Abnehmer;

    c) der einzelnen Angebote, aufgeschlüsselt nach Angebotsmengen, -zeiten und -preisen, sowie den Namen und Anschriften der Angebotsempfänger;

    d) der betriebenen Werbung, aufgeschlüsselt nach Werbeträgern, deren Auflagenhöhe, Verbreitungszeitraum und Verbreitungsgebiet, im Falle von Internet-Werbung der Domain, der Suchmaschinen und anderer Marketingwerkzeuge, mit Hilfe derer die betroffenen Webseiten einzeln oder gemeinsam registriert wurden, der Zugriffszahlen und der Schaltungszeiträume jeder Kampagne;

    e) der nach den einzelnen Kostenfaktoren aufgeschlüsselten Gestehungskosten und des erzielten Gewinns, einschließlich der Umsätze, die mit Zubehör erzielt wurden;

wobei die Beklagten die Richtigkeit ihrer Angaben nach a) bis c) und e) belegen müssen, indem sie Belegkopien wie Rechnungen und Lieferscheine (oder andere Lieferdokumente) vorlegen;

wobei den jeweiligen Beklagten vorbehalten bleibt, die Namen und Anschriften der nichtgewerblichen Abnehmner und Angebotsempfänger statt der Klägerin einem von der Klägerin zu bezeichnenden, ihr gegenüber zur Verschwiegenheit verpflichteten vereidigten Wirtschaftsprüfer mitzuteilen, sofern die Beklagten dessen Kosten tragen und ihn ermächtigen und verpflichten, der Klägerin auf konkrete Anfrage mitzuteilen, ob ein bestimmter Abnehmer oder Angebotsempfänger in der Aufstellung enthalten ist;

ET-II. Es wird festgestellt, dass die Beklagten jeweils verpflichtet sind, der Klägerin sämtliche Schäden zu ersetzen, die ihr durch die unter ET-1. bezeichneten Verletzungshandlungen seit dem 18. Januar 2014 entstanden sind und noch entstehen werden;

ET-III. Die Beklagten werden verurteilt, der Klägerin zu erlauben, eine Zusammenfassung des Urteils unter Nennung der jeweiligen Beklagten auf Kosten der Beklagten in drei aufeinander folgenden Ausgaben des Magazins *Spiegel* zu veröffentlichen;

ET-IV. Die Beklagten tragen die Kosten des Rechtsstreits;

ET-V. Die Klägerin darf als Sicherheit jede unbedingte, unbegrenzte, garantierte Bankbürgschaft einer deutschen Bank oder öffentlichen Sparkasse, die als Zoll- und Steuerbürge anerkannt ist, leisten.