# EXHIBIT 2



| | Z.A | Mdl. | WV | Vert. |
|---|---|---|---|---|
| Ein-gang | 1 4. Aug. 2014 | | | CB, LLP MA |
| Frist | Vorfrist | | Termin | |

Certified translation from German

# Law firm Grzimek

Düsseldorf Regional Court
- Patent Litigation Chamber -
Werdener Str. 1
40227 Düsseldorf

Benjamin Grzimek
Rechtsanwalt (Lawyer)
Königsallee 14
D-40212 Düsseldorf

Phone:   0049 (0) 211 / 13866-296
Fax:       0049 (0) 211 / 13866-77
e-mail:   bgrzimek@eip.com

Our ref.: 434.LM2

March 10, 2014

## COMPLAINT

**Unwired Planet International Ltd.**, Alexandra House, The Sweepstakes, Ballsbridge,
Dublin 4, Republic of Ireland, represented by the Chief Executive Officer Sami Saru, *ibid.*,

— **Plaintiff** —

Representatives:

Benjamin Grzimek
Law firm Grzimek, Königsallee 14,
40212 Düsseldorf and
Hosea Haag
Ampersand LLP, Haydnstraße 10,
80336 München

In collaboration with
David Molnia
DF-MP, Fünf-Höfe, Theatinerstraße 16,
80333 München

a g a i n s t

1. **Google Inc.,** 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA, represented by the Chief Executive Officer Larry Page, *ibid.,*

– **Defendant 1)** –

2. **Google Commerce Ltd.,** Gordon House, Barrow Street, Dublin 4, Ireland, represented by the directors John Thomas Herlihy and Ronan Harris, *ibid.,*

– **Defendant 2)** –

3. **Google Germany GmbH,** ABC-Straße 19, 20354 Hamburg, represented by the director Philipp Justus, *ibid.,*

– **Defendant 3)** –

4. **Samsung Electronics Co., Ltd.,** Seoul Headquarters, Samsung Main Building 250-2 ga, Taepyung-ro, Choong-gu, Seoul, Süd-Korea, represented by the Managing Board which is represented by the Executive Chairman Kwon Oh-hyun and Jong-Kyun Shin, *ibid.,*

– **Defendant 4)** –

5. **Samsung Electronics GmbH,** Samsung House, Am Kronberger Hang 6, 65824 Schwalbach/Ts., represented by the director Dong-Min Kim, *ibid.,*

– **Defendant 5)** –

6. **Huawei Technologies.,** CeBIT 2014 exhibition grounds, hall 2, stand C50, 30521 Hannover, represented by the director Ren Zhengfei, Bantian Longgang, Shenzhen P.R. China,

– **Defendant 6)** –

7. **Huawei Technologies Deutschland GmbH,** Willy-Brandt-Allee 20, 53113 Bonn, represented by the director Jingwen Tao, *ibid.,*

– **Defendant 7)** –

8. **Huawei Technologies Düsseldorf GmbH,** Am Seestern 24, 40547 Düsseldorf, represented by the director Jingwen Tao and Chen Lifang and Meng Wanzhou, *ibid.,*

— **Defendant 8)** —

9. **HTC Germany GmbH,** Solmsstraße 18, Building E 60486 Frankfurt am Main, represented by the director Peter Chou, *ibid.,*

— **Defendant 9)** —

for **patent infringement**

Value in dispute (preliminary estimate): **€ 30,000,000.00**

We shall petition the Court as follows:

**A-I.**  **The Defendants 1 to 7 and 9 are ordered to cease and desist in order to avoid a penalty set by the court of up to €250,000 for each case of a breach, alternatively arrest for disobeying court orders, or arrest for disobeying court orders directly for up to 6 months, in the case of repetitive breach up to 2 years, whereby the arrest shall be executed on the statutory representatives of the respective defendants, from**

1.  **using or offering for use in the Federal Republic of Germany**

      **a method for securely transmitting data between a client and a server over a narrowband channel, where the client and server are connectable by not only the narrowband channel, but also by a wideband channel, said method**

      **comprising the steps of connecting the client and server over the wideband channel; exchanging security information between the client and server over the wideband channel;**

signing data to be transmitted from the server to the client based on the security information; transmitting the signed data from the server to the client over the narrowband channel; and wherein at least a portion of the narrowband channel and the wideband channel are wireless;

(Claim 6 of patent in suit A – EP 989 712 B1)

2. offering, putting on the market, and importing or stocking for the named purposes

mobile devices capable of connecting to a network of computers through a wireless link, said mobile device comprising a display screen that displays graphics and text; a message buffer that temporarily stores a message from a computer on the network of computers, the message having a service identity associated therewith; an application that utilizes the message received from the computer on the network of computers; and a cryptographic controller that controls encryption or signature of outgoing messages and controls the decryption or authentication of incoming messages, said cryptographic controller operating to establish a secure connection over which it receives the incoming messages by using a one-way channel, wherein a companion two-way channel is used to exchange security information needed to establish the secure connection over the one-way channel;

(Claim 7 of patent in suit A – EP 989 712 B1)

A-II.   It is ordered that Defendants 1 to 7 and 9 render accounts of the acts according to motion I above committed by them, respectively, after 6 May 2005,

whereby the rendering of accounts will have to be done in a uniform and structured statement for the attention of the Plaintiff and has to include, where applicable,

a) individual products received or ordered broken down according to amounts, times and prices as well as names and addresses of producers, suppliers and other previous owners;

    b)    individual deliveries broken down according to delivery amounts, delivery times, delivery prices (and product type designation) as well as names and addresses of customers;

    c)    individual offers broken down according to offer amounts, offered times and offer prices as well as names and addresses of recipients of offers;

    d)    sales promotions carried out broken down according to advertising medium, number of issues published, timespan in which it was distributed and territory in which it was distributed and in the case of internet based advertisements the period in which the advertisement was accessible, the domain on which the advertisement was included as well as search engines and other marketing tools under which the respective webpages were registered individually or in a package;

    e)    the actual costs broken down according to individual cost factors and the profit realized, including sales achieved with accessories;

whereby the Defendants 1 to 7 and 9 have to prove the correctness of their statements relating to a) to c) and e) above by providing copies of the respective bills and receipts regarding purchases and sales (alternatively delivery documents);

wherein each Defendant at its option may reserve the right to provide the names and addresses of its bid recipients and non-commercial customers not to the Plaintiff, but instead to a sworn auditor, designated by the Plaintiff, who is pledged to confidentiality, provided that Defendant bears the costs incurred and authorizes said auditor to communicate to Plaintiff upon specific inquiry whether a given delivery or a given customer is contained in the information, or a given bid recipient is contained in the rendering of accounts;

**A-III.** It is affirmed that Defendants 1 to 7 and 9 have to each individually compensate the Plaintiff for damage/loss that resulted from their respective acts described in

Law firm Grzimek
Complaint of 10.03.2014

motion I above and committed since May 6, 2005 and that will result from such acts in the future;

A-IV.   The Defendants 1 to 7 and 9 are ordered to allow Plaintiff to publish a summary of the judgment referring to the respective Defendant at Defendant's expense in 3 consecutive issues of the magazine *Spiegel*;

A-V.   The Defendants 1 to 7 and 9 bear the costs of the legal proceedings;

A-VI.   It is ordered that the Plaintiff be allowed to render any security bond in the form of an unconditional, unlimited, absolute guarantee from a German bank or public savings bank that is an authorized customs or tax guarantor.

**B-I.**   **It is ordered that the Defendants render accounts of the following acts committed by them, respectively, after 4 August 2007:**

1.   using and offering for use (Defendants 1 to 7 and 9) in the Federal Republic of Germany

a method of determining a scrambling code group for a received signal in a digital communication system, in which signals are scrambled by respective scrambling codes, the scrambling codes are assigned to respective scrambling code groups, identities of the scrambling code groups are encoded in the signals by respective code-word-wise cyclically distinct sequences of code words, the method comprising the steps of correlating the received signal to cyclic shifts of each of a plurality of sequences of code words, wherein the code words are S-Hadamard sequences; combining the correlations for each of the plurality of sequences of code words; and determining a maximal combined correlation to identify the scrambling code group for the received signal,

(Claim 3 of patent in suit B – EP 1 105 991 B1)

especially if

each sequence of code words corresponds to a frame of the received signal, and determining the maximal combined correlation identifies a start of the frame;

(Sub-claim 4 of patent in suit B – EP 1 105 991 B1)

and/or if

the correlations are coherently combined;

(Sub-claim 5 of patent in suit B – EP 1 105 991 B1)

and/or if

the correlations are non-coherently combined;

(Sub-claim 6 of patent in suit B – EP 1 105 991 B1)

2.   offering and delivering to customers (Defendants 4 to 6 and 8) in the Federal
Republic of Germany of network devices, which are suitable for and
intended to be used in digital radio transmission systems having at least one
transmitter and at least one receiver, comprising means in the transmitter
for generating a synchronization signal that includes signed versions of S-
Hadamard sequences, wherein the S-Hadamard sequences correspond to
members of a first set of Walsh-Hadamard sequences position-wise
scrambled with a special sequence having complex elements of constant
magnitude; means in the receiver for estimating a time location and
sequence identity of a version of the synchronization signal received,

(Claim 7 of patent in suit B – EP 1 105 991 B1)

especially if

the estimating means descrambles the received version based on the special
sequence and correlates the descrambled received version to members of the
first set of Walsh-Hadamard sequences for identifying the sequence identity;

(Sub-claim 8 of patent in suit B – EP 1 105 991 B1)

and/or if

the estimating means correlates to using a Fast Walsh Transform;

(Sub-claim 9 of patent in suit B – EP 1 105 991 B1)

and/or if

the estimating means correlates the version received to the S-Hadamard sequences for identifying the sequence identity;

(Sub-claim 10 of patent in suit B – EP 1 105 991 B1)

and/or if

the estimating means descrambles the received version based on the special sequence, forms consecutive partial decorrelations of the descrambled received version with a subsequence of a member of the first set of Walsh-Hadamard sequences, and correlates the consecutive partial decorrelations to members of a second set of Walsh-Hadamard sequences, and the members of the second set have lengths less than lengths of the members of the first set;

(Sub-claim 11 of patent in suit B – EP 1 105 991 B1)

and/or if

the estimating means correlates the consecutive partial decorrelations to members of the second set using a Fast Walsh Transform;

(Sub-claim 12 of patent in suit B – EP 1 105 991 B1)

and/or if

the estimating means forms consecutive partial decorrelations of the received version with a plurality of short sequences and correlates the consecutive partial decorrelations with members of a second set of Walsh Hadamard sequences, and the short sequences and the members of the second set have lengths less than lengths of the members of the first set, and the short sequences correspond to position-wise multiplication of the special sequence and a subsequence of a member of the first set;

(Sub-claim 13 of patent in suit B – EP 1 105 991 B1)

and/or if

the estimating means correlates the consecutive partial decorrelations with members of the second set using a Fast Walsh Transform;

(Sub-claim 14 of patent in suit B – EP 1 105 991 B1)

3.  using and offering for use (Defendants 1 to 7 and 9) in the Federal Republic of Germany

a method of determining a time location of a received signal and identifying a Walsh-Hadamard sequence encoded as an S-Hadamard sequence included in the received signal, wherein the S-Hadamard sequence is a product of the Walsh-Hadamard sequence and a special sequence having complex elements of constant magnitude and the Walsh Hadamard sequence is a member of a first set of Walsh-Hadamard sequences, comprising the steps of forming a position-wise product of the received signal and the special sequence; and correlating the product with each a plurality of Walsh-Hadamard sequences for identifying the Walsh-Hadamard sequence encoded in the received signal,

(Claim 17 of patent in suit B – EP 1 105 991 B1)

especially if

the position-wise product is correlated with members of the first set based on a Fast Walsh Transform;

(Sub-claim 18 of patent in suit B – EP 1 105 991 B1)

and/or if

the position-wise product is correlated by forming consecutive partial decorrelations of the position-wise product with a subsequence of a member of the first set of Walsh-Hadamard sequences and correlating the consecutive partial decorrelations to members of a second set of Walsh-Hadamard sequences, and the members of the second set have lengths less than lengths of the members of the first set;

(Sub-claim 19 of patent in suit B – EP 1 105 991 B1)

4.   using and offering for use (Defendants 4 to 6 and 8) in the Federal Republic
     of Germany

     a method of communicating an identity of a scrambling code group for a
     transmitted signal in a digital communication system, in which signals are
     scrambled by respective scrambling codes and the scrambling codes are
     assigned to respective scrambling code groups, comprising the steps of
     providing a plurality of S-Hadamard code words; and encoding the identity
     of the scrambling code group in the transmitted signal as a code-word-wise
     cyclically distinct sequence of the S-Hadamard code words,

     (Claim 27 of patent in suit B – EP 1 105 991 B1)

     especially if

     the sequence of S-Hadamard code words corresponds to a frame of the
     transmitted signal

     (Sub-claim 28 of patent in suit B – EP 1 105 991 B1)


5.   offering, putting on the market (Defendants 4 to 6 and 8), and importing or
     stocking for the named purposes of

     signal generators in a radio transmitter, if these comprise: a special sequence
     generator that produces a special sequence having complex elements of
     constant magnitude; an S-Hadamard sequence generator that receives the
     special sequence and that produces at least one S-Hadamard sequence based
     on the special sequence, wherein S-Hadamard sequences correspond to
     respective members of a set of Walsh-Hadamard sequences position-wise

     scrambled with the special sequence; an identity generator that produces a
     scrambling code group identity; a selector that selects an S-Hadamard
     sequence produced by the S-Hadamard sequence generator based on the
     scrambling code group identity; a combiner that combines the S-Hadamard

sequence selected by the selector with an information signal, forming a combined signal,

(Claim 29 of patent in suit B – EP 1 105 991 B1)

especially if

the special sequence generator includes a memory from which the special sequence is retrieved;

(Sub-claim 30 of patent in suit B – EP 1 105 991 B1)

and/or if

the S-Hadamard sequence generator includes a processor that recursively generates Walsh-Hadamard sequences and a multiplier that forms products of the special sequence and Walsh-Hadamard sequences generated by the processor;

(Sub-claim 31 of patent in suit B – EP 1 105 991 B1)

and/or if

the S-Hadamard sequence generator includes a memory in which Walsh-Hadamard sequences are stored and a multiplier that forms products of the special sequence and Walsh-Hadamard sequences retrieved from the memory

(Sub-claim 32 of patent in suit B – EP 1 105 991 B1)

and/or if

the identity generator includes a memory from which the scrambling code group identity is retrieved;

(Sub-claim 33 of patent in suit B – EP 1 105 991 B1)

6. offering (Defendants 1 to 9 and 11), putting on the market (Defendants 1 to 7 and 9), and importing or stocking for the named purposes in the Federal Republic of Germany

of devices for use in determining a scrambling code group for a received signal in a digital communication system, in which signals are scrambled by

respective scrambling codes, the scrambling codes are assigned to respective scrambling code groups, identities of the scrambling code groups are encoded in the signals by respective code words if the devices comprise: an S-Hadamard code word generator that produces at least one S-Hadamard code word based on a special sequence, wherein S-Hadamard code words correspond to respective members of a set of Walsh Hadamard sequences position-wise scrambled with the special sequence; and a decorrelator, wherein the decorrelator forms at least one correlation of the received signal with at least one S-Hadamard code word produced by the S-Hadamard code word generator,

(Claim 34 of patent in suit B – EP 1 105 991 B1)

especially if

the S-Hadamard code word generator includes a memory from which the at least one S-Hadamard code word is retrieved;

(Sub-claim 35 of patent in suit B – EP 1 105 991 B1)

and/or if

the decorrelator includes a primary decorrelator that forms consecutive correlations of the received signal with a plurality of shorter sequences that correspond to position-wise multiplications of the special sequence and a subsequence of a member of the set of Walsh-Hadamard sequences; and a secondary decorrelator that forms correlations of the consecutive correlations formed by the primary decorrelator with members of a set of Walsh-Hadamard sequences that includes the subsequence;

(Sub-claim 36 of patent in suit B – EP 1 105 991 B1)

and/or if

the secondary decorrelator is a Fast Walsh Transform processor;

(Sub-claim 37 of patent in suit B – EP 1 105 991 B1)

whereby the rendering of accounts will have to be done in a uniform and structured statement for the attention of Plaintiff and has to include, where applicable,

a) individual received or ordered products broken down according to amounts, times and prices as well as names and addresses of producers, suppliers and other previous owners;

b) individual deliveries broken down according to delivery amounts, delivery times, delivery prices (and product type designation) as well as names and addresses of customers;

c) individual offers broken down according to offer amounts, offered times and offer prices as well as names and addresses of receivers of offers;

d) sales promotion carried out broken down according to advertising medium, number of issues published, timespan in which it was distributed and territory in which it was distributed and in the case of internet-based advertisements the period in which the advertisement was accessible, the domain on which the advertisement was included as well as search engines and other marketing tools under which the respective webpages were registered individually or in a package;

e) the actual costs broken down according to individual cost factors and the profit realized, including sales achieved with accessories;

whereby the Defendants have to prove their statements relating to a) to c) and e) above by providing specimen copies of the respective bills and delivery notes (or other delivery documents);

wherein each Defendant at its option may reserve the right to provide the names and addresses of its bid recipients and non-commercial customers not to the Plaintiff, but instead to a sworn auditor to be designated by the Plaintiff, who is pledged to confidentiality, provided that the Defendant bears the costs incurred and authorizes said auditor to communicate to

     Plaintiff upon specific inquiry whether a a given customer or bid recipient is included in the rendering of accounts;

B-II.  It is affirmed that the Defendants have to each individually compensate the Plaintiff for damage/loss that resulted from their respective acts described in motion B-I above and committed since August 4, 2007 and that will result from such acts in the future;

B-III.  The Defendants are ordered to allow Plaintiff to publish a summary of the judgment referring to the respective Defendants at the Defendants' expense in 3 consecutive issues of the magazine *Spiegel*;

B-IV.  The Defendants bear the costs of the legal proceedings;

B-V.  It is ordered that the Plaintiff be allowed to render any security bond in the form of an unconditional, unlimited, absolute guarantee from a German bank or public savings bank that is an authorized customs or tax guarantor.

**C-I.**   It is ordered that the Defendants 1 to 7 and 9 render accounts of the following acts committed by them, respectively, after December 12, 2008:

1.   using or offering for use in the Federal Republic of Germany

a method for conveying measurement information from a terminal in a first communication system to a second communication system, characterized by the steps of converting a plurality of downlink measurement values associated with said first communication system to a plurality of downlink measurement values for said second communication system; comparing said converted plurality of downlink measurement values with at least one threshold measurement value; and if at least one of said converted plurality of downlink measurement values exceeds a predetermined threshold measurement value, sending said at least one of said converted plurality of downlink measurement values on a control channel to a control node in said second communication system,

(Claim 1 of patent in suit C – EP 1 230 818 B1)

especially if

said first communication system comprises a UMTS;

(Sub-claim 2 of patent in suit C – EP 1 230 818 B1)

and/or if

said second communication system comprises a GSM;

(Sub-claim 3 of patent in suit C – EP 1 230 818 B1)

and/or if

said plurality of downlink measurement values associated with said first communication system comprises a plurality of $E_c/I_0$ values;

(Sub-claim 4 of patent in suit C – EP 1 230 818 B1)

and/or if

said plurality of downlink measurement values associated with said first communication system comprises a plurality of RSCP values;

(Sub-claim 5 of patent in suit C – EP 1 230 818 B1)

and/or if

said plurality of downlink measurement values associated with said second communication system comprises a plurality of signal strength values;

(Sub-claim 6 of patent in suit C – EP 1 230 818 B1)

and/or if

said control channel comprises a control channel operable in a non-stealing mode;

(Sub-claim 7 of patent in suit C – EP 1 230 818 B1)

and/or if

said control channel comprises an SACCH (Slow Associated Control Channel);

(Sub-claim 8 of patent in suit C – EP 1 230 818 B1)

2. Offering, putting on the market and importing or stocking the products for the named purposes in the Federal Republic of Germany of

mobile terminals for use in conveying measurement information from a first communication system to a second communication system, characterised by means for converting a plurality of downlink measurement values associated with said first communication system to a plurality of downlink measurement values for said second communication system; means for comparing said converted plurality of downlink measurement values with at least one threshold measurement value; and means for sending at least one of said converted plurality of downlink measurement values on a control

channel to a control node in said second communication system if said at least one of said converted plurality of downlink measurement values exceeds a predetermined threshold measurement value,

(Claim 9 of patent in suit C – EP 1 230 818 B1)

especially if

said first communication system comprises a UMTS;

(Sub-claim 10 of patent in suit C – EP 1 230 818 B1)

and/or if

said second communication system comprises a GSM;

(Sub-claim 11 of patent in suit C – EP 1 230 818 B1)

and/or if

said plurality of downlink measurement values associated with said first communication system comprises a plurality of $E_c/I_0$ values;

(Sub-claim 12 of patent in suit C – EP 1 230 818 B1)

and/or if

said plurality of downlink measurement values associated with said first communication system comprises a plurality of RSCP values;

(Sub-claim 13 of patent in suit C – EP 1 230 818 B1)

and/or if

said plurality of downlink measurement values associated with said second communication system comprises a plurality of signal strength values;

(Sub-claim 14 of patent in suit C – EP 1 230 818 B1)

and/or if

said control channel comprises a control channel operable in a non-stealing mode;

(Sub-claim 15 of patent in suit C – EP 1 230 818 B1)

and/or if

said control channel comprises a SACCH (Slow Associated Control Channel);

(Claim 16 of patent in suit C – EP 1 230 818 B1)

whereby the rendering of accounts will have to be done in a uniform and structured statement for the attention of Plaintiff and has to include, where applicable,

a)   individual received or ordered products broken down according to amounts, times and prices as well as names and addresses of producers, suppliers and other previous owners;

b)   individual deliveries broken down according to delivery amounts, delivery times, delivery prices (and product type designation) as well as names and addresses of customers;

c)   individual offers broken down according to offer amounts, offered times and offer prices as well as names and addresses of receivers of offers;

d)   sales promotions carried out broken down according to advertising medium, number of issues published, timespan in which it was distributed and territory in which it was distributed and in the case of internet-based advertisements the period in which the advertisement was accessible, the domain on which the advertisement was included as well as search engines and other marketing tools with the help of which the respective webpages were registered individually or in a package, the access figures and the placement periods for each campaign;

e)    the actual costs broken down according to individual cost factors and the profit realized, including sales achieved with accessories;

whereby the Defendants 1 to 7 and 9 have to prove their statements relating to a) to c) and e) above by providing copies of the respective bills and receipts regarding purchases and sales (alternatively delivery documents);

wherein each Defendant at its option may reserve the right to provide the names and addresses of its bid recipients and non-commercial customers not to the Plaintiff, but instead to a sworn auditor, designated by the Plaintiff, who is pledged to confidentiality, provided that Defendant bears the incurred costs and authorizes said auditor to communicate to Plaintiff whether a given delivery or a given customer is included in the information, or a given bid recipient is included in the rendering of accounts;

C-II.   It is affirmed that the Defendants 1 to 7 and 9 have to each individually compensate the Plaintiff for damage/loss that resulted from their respective acts described in motion C-I above and committed since December 12, 2008 and that will result from such acts in the future;

C-III.  The Defendants 1 to 9 and 11 are ordered to allow Plaintiff to publish a summary of the judgment referring to a particular Defendant at the Defendants' expense in 3 consecutive issues of the magazine *Spiegel*;

C-IV.  The Defendants 1 to 7 and 9 bear the costs of the legal proceedings;

Law firm Grzimek
Complaint of 10.03.2014

C-V.   It is ordered that the Plaintiff be allowed to render any security bond in the form
of an unconditional, unlimited, absolute guarantee from a German bank or
public savings bank that is an authorized customs or tax guarantor.

**D-I.**     **It is ordered that the Defendants render accounts of the following acts committed by them, respectively, after June 22, 2013:**

1.   using and offering for use in the Federal Republic of Germany

a method in a first node for requesting a status report from a second node, the first node and the second node both being comprised within a wireless communication network, the status report comprising positive and/or negative acknowledgement of data sent from the first node to be received by the second node, wherein the method comprises both the steps of transmitting a sequence of data units or data unit segments to be received by the second node and the steps of counting the number of data units transmitted and the number of data bytes transmitted of the data units transmitted, and for requesting a status report from the second node if the counted number of data units transmitted exceeds or equals a first predefined value, or the counted number of data bytes transmitted of the data units transmitted exceeds or equals a second predefined value,

(Claim 1 of patent in suit D – EP 2 229 744 B1)

especially if

the first predefined value and the second predefined value are configured by, and obtained from, a higher layer, e.g. the "Radio Resource Control";

(Sub-claim 3 of patent in suit D – EP 2 229 744 B1)

and/or if

the step of counting comprises incrementing the first counter according to the transmitted amount of data units and incrementing the second counter according to the amount of data bytes transmitted of the data units transmitted, and wherein the step of requesting a status report from the

second node is performed if the first predefined value is reached or exceeded by the first counter or if the second predefined value is reached or exceeded by the second counter;

(Sub-claim 4 of patent in suit D – EP 2 229 744 B1)

and/or if

the method further comprises the steps of initialising the first counter to zero, and initialising the second counter to zero;

(Sub-claim 5 of patent in suit D – EP 2 229 744 B1)

and/or if

the method further comprises the steps of resetting the first counter to zero, and resetting the second counter to zero;

(Sub-claim 6 of patent in suit D – EP 2 229 744 B1)

and/or if

the steps of resetting the first counter and the second counter is performed when the first predefined value is reached or exceeded by the first counter or when the second predefined value is reached or exceeded by the second counter;

(Sub-claim 9 of patent in suit D – EP 2 229 744 B1)

and/or if

the first node is an item of user equipment;

(Sub-claim 10 of patent in suit D – EP 2 229 744 B1)

Law firm Grzimek
Complaint of 10.03.2014

2. offering, putting on the market and importing or stocking the products for the named purposes in the Federal Republic of Germany of

first nodes comprising an arrangement for requesting a status report from a second node, the first node and the second node both used for a wireless communication network, the status report comprising positive and/or negative acknowledgment of data sent from the first node to be received by the second node, wherein the arrangement comprises a transmitter, adapted to transmit a sequence of data units or data unit segments to be received by the second node, the arrangement further comprises a counting mechanism, adapted to count the number of data units transmitted and the number of data bytes transmitted of the data units transmitted, and a requesting unit, adapted to request a status report from the second node if the counted number of data units transmitted exceeds or equals a first predefined value, or the counted number of data bytes transmitted of the data units transmitted exceeds or equals a second predefined value,

(Claim 12 of patent in suit D – EP 2 229 744 B1)

especially if

the first node is an item of user equipment;

(Sub-claim 13 of patent in suit D – EP 2 229 744 B1)

whereby the rendering of accounts will have to be done in a uniform and structured statement for the attention of Plaintiff and has to include, where applicable,

a) individual received or ordered products broken down according to amounts, times and prices as well as names and addresses of producers, suppliers and other previous owners;

b) individual deliveries broken down according to delivery amounts, delivery times, delivery prices (and product type designation) as well as names and addresses of customers;

c) individual offers broken down according to offer amounts, offered times and offer prices as well as names and addresses of receivers of offers;

d) sales promotions made broken down according to advertising medium, number of issues published, timespan in which it was distributed and territory in which it was distributed and in the case of internet based advertisements the period in which the advertisement was accessible, the domain on which the advertisement was included as well as search engines and other marketing tools under which the respective webpages where registered individually or in a package;

e) the actual costs broken down according to individual cost factors and the profit realized, including the sales achieved with accessories;

whereby the Defendants have to prove their statements relating to a) to c) and e) above by providing copies of the respective bills and receipts regarding purchases and sales (alternatively delivery documents);

wherein each Defendant at its option may reserve the right to provide the names and addresses of its non-commercial customers and bid recipients and not to the Plaintiff, but instead to a sworn auditor, designated by the Plaintiff, who is pledged to confidentiality, provided that the Defendants bear the incurred costs and authorize said auditor to communicate to Plaintiff whether a given delivery or a given customer is included in the information, or a given bid recipient is included in the rendering of accounts;

D-II.  It is affirmed that the Defendants have to each individually compensate the Plaintiff for damage/loss that resulted from their respective acts committed since

June 22, 2013, described in motion D-I above, and that will result from such acts in the future;

D-III.  The Defendants are ordered to allow Plaintiff to publish a summary of the judgment referring to the respective Defendants at Defendants' expense in 3 consecutive issues of the magazine *Spiegel*;

D-IV.  The Defendants bear the cost of the legal proceedings;

D-V.  It is ordered that the Plaintiff be allowed to render any security bond in the form of an unconditional, unlimited, absolute guarantee from a German bank or public savings bank that is an authorized customs or tax guarantor.

Law firm Grzimek
Complaint of 10.03.2014

**ES-I.** It is ordered that the Defendants render accounts of the following acts committed by them, respectively, after December 13, 2013:

1. using (Defendants 1 to 7 and 9) and offering for use (Defendants 1 to 9 and 11) in the Federal Republic of Germany

   a method for operating a mobile terminal in a wireless telecommunications system which defines a plurality of communications cells, the method comprising communicating with a radio base station which serves a first communications cell; determining at least one operating parameter for a second communications cell; detecting non-unique identifier information for the second communications cell; reporting parameter information relating to the or each operating parameter for the second communications cell; and reporting the detected non-unique identifier information to the radio base station of the first communications cell, receiving an instruction from the radio base station of the first communications cell; detecting unique cell identifier information for the second communications cell upon receipt of the instruction; and reporting the detected unique cell identifier information for

   the second communications cell to the radio base station of the first communications cell

   (Claim 1 of patent in suit ES – EP 2 119 287 B1)

   especially if .

   the at least one operating parameter comprising one or more of an encoding code, a signal strength measurement, a signal quality measurement, and timing information;

   (Sub-claim 2 of patent in suit ES – EP 2 119 287 B1)

and/or if

the method further comprises receiving a list of communication cells from the radio base station of the first communications cell, the list including the second communications cell and a plurality of further communications cells;

(Sub-claim 3 of patent in suit ES – EP 2 119 287 B1)

and/or if

the second communications cell neighbours on the first communication cell;

(Sub-claim 4 of patent in suit ES – EP 2 119 287 B1)


2.   offering putting on the market, and importing or stocking the products for the named purposes (Defendants 1 – 7 and 9) in the Federal Republic of Germany of mobile terminals for use in a wireless telecommunications system which defines a plurality of communications cells, the terminals comprising means for carrying out the steps of a method as claimed in any one of the preceding claims,

(Claim 6 of patent in suit ES – EP 2 119 287 B1)

especially if

the mobile terminal comprises a controller for communicating with a radio base station which serves a first communications cell, wherein the controller is operable to determine at least one operating parameter for a second communications cell; detect non-unique identifier information for the second communications cell; report parameter information relating to the or each operating parameter for the second communications cell and report the non-unique identifier information to the radio base station of the first communications cell; receive an instruction from the radio base station of the first communications cell if the detected non-unique identifier

information is not included in a neighbouring cell set of the first communications cell; detect unique cell identifier information for the second communications cell upon receipt of the instruction; and report the detected unique cell identifier information for the second communications cell to the radio base station of the first communications cell;

(Sub-claim 7 of patent in suit ES – EP 2 119 287 B1)

and/or if

the at least one operating parameter comprises one or more of a scramble code, a signal strength measurement, a signal quality measurement, and timing information;

(Sub-claim 8 of patent in suit ES – EP 2 119 287 B1)

and/or if

the controller is operable to receive a list of communications cells from the radio base station of the first communications cell, the list including the second communications cell and a plurality of further communications cells;

(Sub-claim 9 of patent in suit ES – EP 2 119 287 B1)

and/or if

the second communications cell neighbours on the first communication cell;

(Sub-claim 10 of patent in suit ES – EP 2 119 287 B1)

and/or if

the controller is operable to detect non-unique cell identifier information for a plurality of further communications cells; report parameter information relating to the or each operating parameter for the plurality of further communications cells and report the non-unique identifier information to the radio base station of the first communications cell; receive an instruction

from the radio base station of the first communications cell if the detected non-unique identifier information is not included in a neighbouring cell set of the first communications cell; detect unique cell identifier information for the plurality of further communications cells upon receipt of the instruction; and report the detected unique cell identifier information for the plurality of further communications cells to the radio base station of the first communications cell

**(Sub-claim 11 of patent in suit ES – EP 2 119 287 B1)**

3. **using and offering for use (Defendants 4 to 6 and 8) in the Federal Republic of Germany**

a method for controlling resources in a wireless telecommunications system which defines a plurality of communications cells, the method comprising communicating with a mobile terminal operating in a first communications cell; receiving non-unique identifier information and parameter information relating to at least one operating parameter for a second communications cell from the mobile terminal; defining a neighbour cell list for the mobile terminal, the neighbour cell list including the second communications cell, determining from the non-unique identifier information as to whether unique cell identity information is required for the second communications cell; and, if such unique identity information is required, transmitting an instruction to the mobile terminal; receiving unique cell identifier information relating to the second communications cell from the mobile terminal; and defining a handover candidate cell list for the mobile terminal, the handover candidate cell list including the second communications cell,

**(Claim 12 of patent in suit ES – EP 2 119 287 B1)**

Law firm Grzimek
Complaint of 10.03.2014

especially if

the at least one operating parameter comprises one or more of a scramble code, a signal strength measurement, a signal quality measurement, and timing information;

(Sub-claim 13 of patent in suit ES – EP 2 119 287 B1)

and/or if

the second communications cell neighbours on the first communication cell;

(Sub-claim 14 of patent in suit ES – EP 2 119 287 B1)

and/or if

the method further comprises receiving non-unique cell identifier information for a plurality of further communications cells from the mobile terminal; determining, from the non-unique identifier information, whether unique cell identity information is required for the plurality of further communications cells; and, if such unique identity information is required; transmitting an instruction to the mobile terminal; receiving unique cell identification information relating to the plurality of further communications cells from the mobile terminal; and defining a handover candidate cell list for the mobile terminal, the handover candidate cell list including the plurality of further communication cells

(Sub-claim 15 of patent in suit ES – EP 2 119 287 B1)

4.   offering, putting on the market, and importing or stocking of the products for the named purposes (Defendants 4 to 6 and 8), in the Federal Republic of Germany, of

wireless telecommunications networks which define a plurality of communications cells, the networks comprising network resources operable to communicate with a mobile terminal operating in a first communications

cell; receive non-unique identifier information and parameter information relating to at least one operating parameter for the second communications cell from the mobile terminal; define a neighbour cell list for the mobile terminal, a neighbour cell list including the second communications cell; determine, from the non-unique identifier information, whether unique cell identity information is required for the second communications cell; and, if such unique identity information is required; transmit an instruction to the mobile terminal; receive unique cell identifier information relating to the second communications cell from the mobile terminal; and define a handover candidate cell list for the mobile terminal, the handover candidate cell list including the second communications cell,

(Claim 16 of patent in suit ES – EP 2 119 287 B1)

especially if

the at least one operating parameter comprises one or more of a scramble code, a signal strength measurement, a signal quality measurement, and timing information;

(Sub-claim 17 of patent in suit ES – EP 2 119 287 B1)

and/or if

the second communications cell neighbours on the first communication cell;

(Sub-claim 18 of patent in suit ES – EP 2 119 287 B1)

and/or if

the network resources are operable to receive non-unique cell identifier information for a plurality of further communications cells from the mobile terminal; determine, from the non-unique identifier information, whether unique cell identity information is required for the plurality of further communications cells; and, if such unique identity information is required,

transmit an instruction to the mobile terminal; receive unique cell identifier information relating to the plurality of further communications cells from the mobile terminal; and define a handover candidate cell list for the mobile terminal, the handover candidate cell list including the plurality of further communications cells;

(Sub-claim 19 of patent in suit ES – EP 2 119 287 B1)

and/or if

the network resources are provided by a radio base station;

(Sub-claim 20 of patent in suit ES – EP 2 119 287 B1)

whereby the rendering of accounts will have to be done in a uniform and structured statement for the attention of Plaintiff and has to include, where applicable,

a) individual received or ordered products broken down according to amounts, times and prices as well as names and addresses of producers, suppliers and other previous owners;

b) individual deliveries broken down according to delivery amounts, delivery times, delivery prices (and product type designation) as well as names and addresses of customers;

c) individual offers broken down according to offer amounts, offered times and offer prices as well as names and addresses of receivers of offers;

d) sales promotions made broken down according to advertising medium, number of issues published, timespan in which it was distributed and territory in which it was distributed and in the case of internet based advertisements the period in which the advertisement was accessible, the domain on which the advertisement was included as well as search engines and other marketing tools with the help of which the respective webpages were registered individually or in a package, the access figures and the advertisement placement period of each campaign;

   e)  the actual costs broken down according to individual cost factors and the profit realized, including sales achieved with accessories;

whereby the Defendants have to prove their statements relating to a) to c) and e) above by providing copies of the respective bills and receipts regarding purchases and sales (alternatively delivery documents);

wherein each Defendant at its option may reserve the right to provide the names and addresses of its bid recipients and non-commercial customers not to the Plaintiff, but instead to a sworn auditor designated by the Plaintiff who is pledged to confidentiality, provided that Defendant bears the cost incurred and authorizes said auditor to communicate to Plaintiff whether a given delivery or a given customer is included in the information, or a given bid recipient is included in the rendering of accounts;

**ES-II.** It is affirmed that the Defendants have to each individually compensate the Plaintiff for damage/loss that resulted from their respective acts described in motion ES-I above and committed since December 13, 2013 and that will result from such acts in the future;

**ES-III.** The Defendants are ordered to allow Plaintiff to publish a summary of the judgment naming the respective Defendants at the Defendants' expense in 3 consecutive issues of the magazine *Spiegel*;

**ES-IV.** The Defendants bear the costs of the legal proceedings;

Law firm Grzimek
Complaint of 10.03.2014

ES-V.  **It is ordered that the Plaintiff be allowed to render any security bond in the form of an unconditional, unlimited, absolute guarantee from a German bank or public savings bank that is an authorized customs or tax guarantor.**

**ET-I.** It is ordered that the Defendants render accounts of the following acts committed by them, respectively, after January 18, 2014:

1. using and offering for use (Defendants 1 to 7 and 9) in the Federal Republic of Germany

   a method for operating a mobile terminal in a wireless telecommunications system which defines a plurality of communications cells in which a non-unique cell identity and a unique cell identity are transmitted, the method comprising communicating with a radio base station which serves a first communications cell; receiving a request from the radio base station to retrieve the unique cell identity of a second communications cell among the plurality of communications cells; retrieving the unique cell identity of the second communications cell; and      reporting the unique cell identity of the second communications cell to the radio base station of the first communications cell,

   (Claim 1 of patent in suit ET – EP 2 485 514 B1)

   especially if

   the step of receiving a request is preceded by the steps of determining the non-unique cell identity of the second communications cell and reporting (103) the non-unique cell identity of the second communications cell to the radio base station that serves the first communications cell;

   (Sub-claim 2 of patent in suit ET – EP 2 485 514 B1)

   and/or if

   the non-unique cell identity of the second communications cell as being reported has tied to it at least one operating parameter of the second communications cell comprising one or more of a signal strength measurement, a signal quality measurement, and timing information;

   (Sub-claim 3 of patent in suit ET – EP 2 485 514 B1)

and/or if

retrieving and reporting the unique cell identity is performed in response to receiving the request from the radio base station of the first communications cell;

(Sub-claim 4 of patent in suit ET – EP 2 485 514 B1)

and/or if

the second communications cell neighbours on the first communications cell;

(Sub-claim 5 of patent in suit ET – EP 2 485 514 B1)

2.  offering, putting on the market, and importing or stocking for the named purposes ((Defendants 1 to 7 and 9) in the Federal Republic of Germany of the products

mobile terminals for use in a wireless telecommunications system which comprise a plurality of communications cells in which a non-unique cell identity and a unique cell identity are transmitted, the terminals comprising a controller for communicating with a radio base station which serves a first communications cell, wherein the controller in response to a receipt of an instruction from the radio base station of the first communications cell is operable to detect unique cell identity information for a second communications cell; and report the unique cell identity information for the second communications cell to the radio base station of the first communications cell,

(Claim 6 of patent in suit ET – EP 2 485 514 B1)

especially if

the mobile terminal is operable to retrieve the non-unique cell identity of the second communications cell and to report the non-unique cell identity of the second communications cell to the base station that serves the first communications cell;

(Sub-claim 7 of patent in suit ET – EP 2 485 514 B1)

and/or if


the second communications cell neighbours on the first communications cell;

(Sub-claim 9 of patent in suit ET – EP 2 485 514 B1)

and/or if

the controller is operable to detect unique cell identities for a plurality of further communications cells, and to report the unique cell identities as detected to the radio base station of the first communications cell;

(Sub-claim 10 of patent in suit ET – EP 2 485 514 B1)


3.  using and offering for use in the Federal Republic of Germany (Defendants 4 to 6 and 8)

a method for self-configuring of cell neighbours in a wireless telecommunications system which comprises a plurality of communications cells in which a non-unique cell identity and a unique cell identity are transmitted, the method comprising communicating with a mobile terminal operating in a first communications cell; requesting the mobile terminal to retrieve the unique cell identity of a second communications cell; receiving the unique cell identity of the second communications cell from the mobile terminal; and establishing a transport connection by finding in a lookup map

mapping of the unique cell identity of the second communications cell with a network address of the radio base station that serves the second communications cell,

(Claim 11 of patent in suit ET – EP 2 485 514 B1)

especially if

the step of requesting the unique cell identity is preceded by the step of receiving from the mobile terminal a non-unique cell identity of the second communications cell;

(Sub-claim 12 of patent in suit ET – EP 2 485 514 B1)

and/or if

the non-unique cell identity as received has tied to it at least one operating parameter of the second communications cell comprising one or more of a signal strength measurement, a signal quality measurement, and timing information;

(Sub-claim 13 of patent in suit ET – EP 2 485 514 B1)

and/or if

said network address is an IP address;

(Sub-claim 15 of patent in suit ET – EP 2 485 514 B1)

and/or if

the method is performed by a radio base station;

(Sub-claim 16 of patent in suit ET – EP 2 485 514 B1)

4.  offering, putting on the market, and importing or stocking the products for the named purposes (Defendants 4 to 6 and 8) in the Federal Republic of Germany of

wireless telecommunications networks which define a plurality of communications cells in which a non-unique cell identity and a unique cell identity are transmitted, the network comprising network resources operable to communicate with a mobile terminal operating in a first communications cell; request the mobile terminal to retrieve the unique cell identity of a second communications cell; receive from the mobile terminal a unique cell identity of the second communications cell; establish a transport connection by finding in a lookup map a mapping of the unique cell identity of the second communications cell with a network address of the radio base station that serves the second communications cell,

(Claim 17 of patent in suit ES – EP 2 485 514 B1)

especially if

said network resources are further operable to receive from the mobile terminal the non-unique cell identity of the second communications cell;

(Sub-claim 18 of patent in suit ET – EP 2 485 514 B1)

and/or if

said network resources are operable to receive unique cell identities for a plurality of further communications cells from the mobile terminal;

(Sub-claim 20 of patent in suit ET – EP 2 485 514 B1)

and/or if

said network address is an IP address;

(Sub-claim 21 of patent in suit ET – EP 2 485 514 B1)

and/or if

the network resources are provided by a radio base station;

(Sub-claim 22 of patent in suit ET – EP 2 485 514 B1)

whereby the rendering of accounts will have to be done in a uniform and structured statement for the attention of Plaintiff and has to include, where applicable,

   a) individual products received or ordered broken down according to amounts, times and prices as well as names and addresses of producers, suppliers and other previous owners;

   b) individual deliveries broken down according to delivery amounts, delivery times, delivery prices (and product type designation) as well as names and addresses of customers;

   c) individual offers broken down according to offer amounts, offered times and offer prices plus names and addresses of receivers of offers;

   d) sales promotion carried out broken down according to advertising medium, number of issues published, timespan in which it was distributed and territory in which it was distributed and in the case of internet-based advertisements the period in which the advertisement was accessible, the domain on which the advertisement was included as well as search engines and other marketing tools under which the respective webpages were registered individually or in a package, the access figures and the periods of advertisement placement of every campaign;

   e) the actual costs broken down according to individual cost factors and the profit realized, including sales achieved with accessories;

whereby the Defendants have to prove their statements relating to a) to c) and e) above by providing copies of the respective bills and receipts regarding purchases and sales (alternatively delivery documents);

wherein each Defendant at its option may reserve the right to provide the names and addresses of its bid recipients and non-commercial customers not to the Plaintiff, but instead to a sworn auditor, designated by the Plaintiff, who is pledged to confidentiality, provided that Defendant bears the incurred costs and authorizes and obliges said auditor to communicate to Plaintiff whether a given customer is included in the information, or a given bid recipient is included in the rendering of accounts;

ET-II. It is affirmed that the Defendants have to each individually compensate the Plaintiff for all damage/loss that resulted from their respective acts described in motion ET-I above and committed since January 18, 2014 and that will result from such acts in the future;

ET-III.The Defendants are ordered to allow Plaintiff to publish a summary of the judgment naming the respective Defendants at the Defendants' expense in 3 consecutive issues of the magazine *Spiegel*;

ET-IV.The Defendants bear the cost of the legal proceedings;

ET-V. It is ordered that the Plaintiff be allowed to render any security bond in the form of an unconditional, unlimited, absolute guarantee from a German bank or public savings bank that is an authorized customs or tax guarantor.

It is hereby certified that the above is a correct and complete translation from the ~~German~~ language.

Place ~~Duisburg~~          Date  7 May 2014

Sworn translator for the English language for the courts of the Land of North Rhine-Westphalia, Federal Republic of Germany
316 E -6.3500



DAVID GEOFFREY MOSS
Sworn translator
Sworn
translator
for English for the
courts of the Land of
North Rhine Westphalia
316E-6.3800
Phones: +49 (0)203 / 58 83 30
47249 DUISBURG