# EXHIBIT 3

IN THE HIGH COURT OF JUSTICE                         Claim No: HP 14 BO1038

CHANCERY DIVISION

PATENTS COURT

B E T W E E N

### UNWIRED PLANET INTERNATIONAL LIMITED

(a company incorporated under the laws of the Republic of Ireland)

<u>Claimant</u>

- and -

### (1) HUAWEI TECHNOLOGIES CO., LIMITED

(a company incorporated under the laws of the People's Republic of China)

### (2) HUAWEI TECHNOLOGIES (UK) CO., LIMITED

### (3) SAMSUNG ELECTRONICS CO., LIMITED

(a company incorporated under the laws of the Republic of Korea)

### (4) SAMSUNG ELECTRONICS (UK) LIMITED

### (5) GOOGLE INC.

(a company incorporated under the laws of Delaware, USA)

### (6) GOOGLE IRELAND LIMITED

(a company incorporated under the laws of the Republic of Ireland)

### (7) GOOGLE COMMERCE LIMITED

(a company incorporated under the laws of the Republic of Ireland)

<u>Defendants</u>

---

### PARTICULARS OF CLAIM

---

**THE PATENTS**

1.    The Claimant is a limited liability company incorporated under the laws of the Republic
      of Ireland and is the proprietor of the following patents ("the Patents").

      (A)    European Patent (UK) 1,230,818 ("the '818 Patent") a copy of which is attached
             hereto as Annex 1;

(B)    European Patent (UK) 2,229,744 ("the '744 Patent") a copy of which is attached hereto as Annex 2;

(C)    European Patent (UK) 2,119,287 ("the '287 Patent") a copy of which is attached hereto as Annex 3;

(D)    European Patent (UK) 2,485,514 ("the '514 Patent") a copy of which is attached hereto as Annex 4. The '514 Patent is a divisional of the '287 Patent;

(E)    European Patent (UK) 1,105,991 ("the '991 Patent") a copy of which is attached hereto as Annex 5;

(the "Declared Essential Patents"); and

(F)    European Patent (UK) 0,989,712 ("the '712 Patent") a copy of which is attached hereto as Annex 6.

2.    The date of publication of the application for and the date of grant of each Patent was as follows:

| Patent | Application published | Granted with effect from |
|--------|----------------------|--------------------------|
| '818 | 14 August 2002 | 12 November 2008 |
| '744 | 22 September 2010 | 22 May 2013 |
| '287 | 18 November 2009 | 13 November 2013 |
| '514 | 8 August 2012 | 18 December 2013 |
| '991 | 13 June 2001 | 4 July 2007 |
| '712 | 29 March 2000 | 6 April 2005 |

3.    The Patents are in force.

4.    The applications for the Declared Essential Patents were made by Telefonaktiebolaget LM Ericsson ("Ericsson").

5.    By an assignment dated 11 February 2013, Ericsson assigned the '818 and '991 Patents and the applications for the '744, '287 and '514 Patents to Cluster LLC, a Delaware Limited Company together with an assignment of Ericsson's right to sue and recover damages or other compensation for past, present or future infringements, and the rights to sue and obtain equitable relief, including injunctive relief. By an assignment dated 13 February 2013, Cluster LLC assigned the '818 and '991 Patents and the applications for the '744, '287 and '514 Patents to Unwired Planet LLC, a Delaware Limited Liability Company, together with the right to sue and recover damages or other compensation for past, present or future infringements, and the rights to sue and obtain equitable relief,

including injunctive relief.  Copies of the said assignments are attached hereto as Annex 7.

6.   The '712 Patent was granted to Openwave Systems Inc., which changed its name to Unwired Planet Inc. on 28 April 2012.

7.   By an assignment dated 14 September 2012, Unwired Planet Inc. assigned the '712 Patent to Unwired Planet LLC, with rights together with Unwired Planet Inc.'s rights to all causes of action, remedies and other enforcement rights in the '712 Patent including recovery and damages for past present and future infringement.  A copy of the said assignment is annexed hereto as Annex 8.

8.   By an assignment dated 27 February 2014, Unwired Planet LLC assigned the '818, '991, '744, '287, '514 and '712 Patents to the Claimant together with Unwired Planet LLC's rights to all causes of action, remedies and other enforcement rights relating to the Assigned Patents including the right to initiate and maintain legal proceedings in respect of any past, present or future infringements thereof and to seek and recover damages or other compensation in respect of such infringements and obtain equitable relief, including injunctive relief, in respect of such infringements. A copy of the said assignment is attached hereto as Annex 9.

9.   Applications to register the Claimant as proprietor of the patents in place of Unwired Planet LLC have been made to the United Kingdom Intellectual Property Office.

**ESSENTIALITY AND FRAND LICENCES**

10.   The term "Essential" as used herein has the meaning ascribed to it in the relevant ETSI IPR Policy under the relevant ETSI Rules of Procedure.

11.   Ericsson and Unwired Planet LLC have made declarations to the European Telecommunications Standards Institute ("ETSI") in accordance with clause 4.1 of the ETSI IPR Policy as summarised in the following table:

| Declaration relevant to Patent | Declaration by reference to | Declarant | Date of declaration | Annex at which declaration is attached |
|---|---|---|---|---|
| '818 | US6393286 | Ericsson | 9 March 2009 | 10 |
| | US6393286 | Unwired Planet LLC | 14 June 2013 | 13 |
| '744 | WO2009/088337 | Ericsson | 20 May 2010 | 11 |
| | US7948879 | Unwired Planet LLC | 14 June 2013 | 13 |
| '287 and '514 | WO2008/104196 | Ericsson | 22 April 2009 | 12 |
| | US7957743 | Unwired Planet LLC | 14 June 2013 | 13 |

| '991 | WO 00/10277 | Ericsson | 24 May 2002 | 14 |
| | US6526091 | Unwired Planet LLC | 14 June 2013 | 13 |

12.    In accordance with clause 4.3 of the ETSI IPR Policy, the said declarations are deemed to have been fulfilled in respect of all existing and future members of the patent family to which the declared patents and patent applications belong, including the Declared Essential Patents as indicated in the foregoing table.

13.    In the premises, Ericsson and Unwired Planet LLC have declared to ETSI their belief that the Declared Essential Patents may be or may become Essential to at least the UMTS and LTE telecommunications standards and/or technical specifications as follows:

| Patent | Standard | Technical specification | Illustrative paragraphs | Release and version referenced |
|---|---|---|---|---|
| '818 | UMTS | 3GPP TS 45.008 | 8.1.5.1, 8.4 | 7.10.0 |
| '744 | LTE | 3GPP TS 36.322 | 5.2.2 | 8.3.0 |
| '287 '514 | LTE | 3GPP TS 36.331 | 5.5 | 8.5.0 |
| '991 | UMTS | (not specified) | (not specified) | (not specified) |

14.    Each of the said declarations includes an IPR Licensing Declaration to the effect that, to the extent that the Declared Essential Patents are or become, and remain, Essential to the identified standard and/or technical specifications, the declarant is prepared to grant irrevocable licences under the Declared Essential Patents on terms and conditions which are in accordance with clause 6.1 of the ETSI IPR Policy, that is to say on fair, reasonable and non-discriminatory ("FRAND") terms.

15.    On 6 March 2014, the Claimant made a General IPR Licensing Declaration to ETSI in accordance with clause 6.1 of the ETSI IPR Policy to the effect that any patents it owns are or become, and remain Essential to all ETSI Standards and technical specifications, the Claimant is prepared to grant irrevocable licences under those patents on terms and conditions which are in accordance with clause 6.1 of the ETSI IPR Policy, that is to say on fair, reasonable and non-discriminatory ("FRAND") terms. The Claimant is accordingly prepared to grant such licences under the Standard Essential Patents in accordance with the said declarations and ESTI IPR Policy.  A copy of the said declaration is attached hereto at Annex 15.

16.   The Declared Essential Patents are and remain Essential to certain versions and releases ("Relevant Versions and Releases") of the technical specifications and standards as set out in Schedule 1 hereto.  The Claimant relies on the following:

(A)   Annex 16 contains a comparison of features of claims 1-16 of the '818 Patent with the implementation of handovers from a GSM (so-called 2G) cell to a UMTS (so-called 3G) cell during an active connection as specified in sections 8.1.5.1 and 8.4 of the GSM standard technical specification 3GPP TS 45.008 release 5, version 5.22.0.

(B)   Annex 17 contains a comparison of the features of claims 1, 3, 4, 5, 6, 9, 10, 12, and 13 of the '744 Patent with the process of "polling" as specified in section 5.2.2 of the LTE standard technical specification 3GPP TS 36.322, release 8, version 8.8.0.

(C)   Annex 18 contains a comparison of the features of claims 1-4 and 6-20 of the '287 Patent with the Automatic Neighbour Relation function defined in sections 22.3.2a, 22.3.3 and 22.3.4 of the LTE standard technical specification 3GPP TS 36.300, release 8, version 8.9.0.  Implicit in the implementation of the said Automatic Neighbour Relation function is the use of the measurement reporting defined in sections 5.5.1, 5.5.2, 5.5.3, 5.5.4 and 5.5.5 of the LTE standard technical specification 3GPP TS 36.331 (release 8, version 8.3.0 and above).

(D)   Annex 19 contains a comparison of the features of claims 1-22 of the '514 Patent with the Automatic Neighbour Relation function defined in sections 22.3.2a, 22.3.3 and 22.3.4 of the LTE standard technical specification 3GPP TS 36.300, release 8, version 8.9.0.  Implicit in the implementation of the said Automatic Neighbour Relation function is the use of the measurement reporting defined in sections 5.5.1, 5.5.2, 5.5.3, 5.5.4 and 5.5.5 of the LTE standard technical specification 3GPP TS 36.331 (release 8, version 8.3.0 and above).

(E)   Annex 20 contains a comparison of the features of claims 3-14, 17-19 and 27-37 of the '991 Patent with the "cell search" procedure described in Annex C of technical specification 3GPP TS 25.214 for V3.12.0 release 1999 of the UMTS standard and the broadcasting of a Secondary Synchronisation Channel (S-SCH) comprising a Secondary Synchronisation Code in the form of cyclically unique sequences of scrambled Hadamard codes indicating a primary scrambling code group of the NodeB cell, generated as described in section 5.2.3 of technical specification 3GPP TS 25.213 for V3.9.0, release 1999 of the UMTS standard.

It is the Claimant's case that there is no material difference between the functionality of the sections of the releases and versions of the technical specifications of the standards

5

relied upon in the comparisons set out at Annexes 16 to 20, and those same sections as present in all other Relevant Versions & Releases. Insofar as any further releases are made available in respect of which there is no such material difference, the Claimant will rely at trial on such further releases as being included in the Relevant Versions & Releases.

**THE DEFENDANTS**

**The Huawei Defendants**

17.   The First Defendant, Huawei Technologies Co., Ltd, is a Chinese company, with headquarters at Bantian, Loggan District, Shenzen, 518129, Guandong, People's Republic of China. The First Defendant is, amongst other things, a manufacturer and global supplier of mobile devices and mobile telecommunications network infrastructure equipment.

18.   The Second Defendant, Huawei Technologies (UK) Co., Ltd, is a private limited company incorporated under the laws of England and Wales, with registered company number 04295981. The Second Defendant is a wholly owned subsidiary of the First Defendant.

19.   The First and Second Defendants ("Huawei Defendants") have infringed the Patents as set out in the Huawei Particulars of Infringement served herewith.

20.   The Claimant, along with its affiliated group companies (the "Group"), is, in accordance with the declarations referred to in paragraphs 11 to 15 above and the ETSI IPR Policy, seeking to grant licences to the First and Second Defendants in exchange for royalties to which it is entitled. The Group has pursued negotiations with the First Defendant seeking to license the Patents on FRAND terms but has thus far been unsuccessful. The Claimant intends to continue to make such efforts.

**The Samsung Defendants**

21.   The Third Defendant, Samsung Electronics Co., Ltd., is a South Korean company with Headquarters at 29, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, Korea. The Third Defendant is, amongst other things, a manufacturer and global supplier of mobile devices and mobile telecommunications network infrastructure equipment.

22.   The Fourth Defendant, Samsung Electronics (UK) Limited, is a private limited company incorporated under the laws of England and Wales, with registered company number 03086621. The Fourth Defendant is a wholly owned subsidiary of the Third Defendant.

23.   The Third and Fourth Defendants ("Samsung Defendants") have infringed the Patents as set out in the Samsung Particulars of Infringement served herewith.

24.     The Claimant, along with its affiliated group companies (the "Group"), is, in accordance with the declarations referred to in paragraphs 11 to 15 above and the ETSI IPR Policy, seeking to grant licences to the Third and Fourth Defendants in exchange for royalties to which it is entitled.   The Group has pursued negotiations with the Third Defendant seeking to license the Patents on FRAND terms but has thus far been unsuccessful.  The Claimant intends to continue to make such efforts.

**The Google Defendants**

25.     The Fifth Defendant, Google Inc., is a company incorporated under the laws of the state of Delaware with headquarters in Mountain View, California.  The Fifth Defendant and its subsidiaries are, amongst other things, providers of online and telecommunications services and of mobile telecommunications hardware.

26.     The Sixth Defendant, Google Ireland Ltd, is Irish company 368047 registered on 28 February 2003. Its registered address is Gordon House, Barrow Street, Dublin.

27.     The Seventh Defendant, Google Commerce Ltd, is Irish company 512080 registered on 18 April 2012. Its registered address is 70 Sir John Rogerson's Quay, Dublin.

28.     The Sixth and Seventh Defendants are wholly owned subsidiaries of the Fifth Defendant.

29.     The Fifth, Sixth and Seventh Defendants ("Google Defendants") have infringed the Patents as set out in the Google Particulars of Infringement served herewith.

30.     The Claimant, along with its affiliated group companies (the "Group"), is, in accordance with the declarations referred to in paragraphs 11 to 15 above and the ETSI IPR Policy, seeking to grant licences to the Fifth, Sixth and Seventh Defendants in exchange for royalties to which it is entitled.   The Group has pursued negotiations with the Fifth Defendant seeking to license the Patents on FRAND terms but has thus far been unsuccessful.  The Claimant intends to continue to make such efforts.

**MATTERS COMMON TO ALL DEFENDANTS**

31.     In respect of acts complained of that were carried out after publication of the application for each Declared Essential Patent (other than the '991 Patent) and before grant of that Patent, the Claimant seeks relief pursuant to section 69 of the Patents Act 1977 on the basis that the acts would have infringed not only that Patent but also, if it had been granted on the date of the publication of the application, the application as published.

32.     By reason of the matters complained of, the Claimant has suffered loss and damage. Unless restrained by the Court, the Defendants and each of them threaten and intend to continue to infringe the Patent in the manner set out in the Particulars of Infringement whereby the Claimant will suffer further loss and damage.

33.   The Claimant is not at present able to give particulars of all the Defendants' actual and intended acts of infringement but at trial of this action the Claimant will seek relief in respect of any such act.

34.   The Claimant is entitled to and claims interest on all sums found due to it pursuant to section 35A of the Senior Courts Act 1981 or the equitable jurisdiction of the Court at such rate and for such period as the Court thinks fit.

**AND THE CLAIMANT CLAIMS:**

(1)   A declaration that the Patents and each of them have been or will be infringed by the Defendants' actual or intended actions.

(2)   An injunction to restrain the Defendants and each of them (whether acting by their directors, officers, servants, agents or any of them otherwise howsoever) from infringing the '712 Patent.

(3)   An order that the Defendants take all steps as are in their power to retrieve from the channels of distribution all products the sale, disposal or keeping of which would infringe the '712 Patent.

(4)   An order for delivery up or destruction upon oath of all articles and materials in the possession, custody or control of the Defendants (or each of them) which infringe the '712 Patent.

(5)   Save insofar as the Defendants and each of them are entitled to and take a licence to the Declared Essential Patents on FRAND terms (in accordance with the Claimant's undertakings and the ETSI IPR Policy) and insofar as the Claimant is and remains required to grant such a licence:

   a.   an injunction to restrain the Defendants and each of them (whether acting by their directors, officers, servants, agents or any of them otherwise howsoever) from infringing the Declared Essential Patents;

   b.   an order that the Defendants take all steps as are in their power to retrieve from the channels of distribution all products the sale, disposal or keeping of which would infringe the Declared Essential Patents or any of them; and

   c.   an order for delivery up or destruction upon oath of all articles and materials in the possession, custody or control of the Defendants (or each of them) which infringe the Declared Essential Patents or any of them.

(6)     An order for appropriate measures for the dissemination and publication of the judgment to be taken at the expense of the Defendants and each of them.

(7)     An inquiry as to damages for patent infringement (including damages in accordance with the IP (enforcement etc.) Regulations 2006) or at the Claimant's option an account of profits made by the Defendants and each of them by their acts of infringement.

(8)     An order that the Defendants pay the Claimant all sums found due together with interest pursuant to section 35A of the Senior Courts Act 1981 or pursuant to the Court's equitable jurisdiction for such period and at such rate as the Court thinks is fit.

(9)     Further or other relief.

(10)    Costs.

RICHARD MEADE QC

ADRIAN SPECK QC

MARK CHACKSFIELD

JAMES WHYTE

**STATEMENT OF TRUTH**

The Claimant believes that the facts stated in these Particulars of Claim are true.

Signed:

Name:       Gary Moss

Position:    Partner at EIP Europe LLP (Solicitors for the Claimant)

Dated:      10 March 2014

Served this 10th day of March 2014 by EIP Europe LLP, Solicitors for the Claimant

Schedule 1

| Standard | Technical specification | Relevant Date | Relevant Versions & Releases | Patent alleged to be infringed | Products alleged to infringe |
|---|---|---|---|---|---|
| GSM | 3GPP TS 45.008 | 12 May 2006 | All versions of Releases 5, 6, 7, 8, 9, 10, 11 and 12 of 3GPP TS 45.008 made available on or after the Relevant Date | '818 | 2G/3G Mobile Devices |
| LTE | 3GPP TS 36.322 | 20 March 2008 | All versions of releases 8, 9, 10 and 11 made available on or after the Relevant Date | '744 | 4G Mobile Devices 4G Base Stations |
| LTE | 3GPP TS 36.331 | 23 September 2008 | All versions of releases 8, 9, 10, 11 and 12 made available on or after the Relevant Date | '287 '514 | 4G Mobile Devices 4G Base Stations |
| LTE | 3GPP TS 36.300 | 25 June 2008 | All versions of releases 8, 9, 10, 11 and 12 made available on or after the Relevant Date | '287 '514 | 4G Mobile Devices 4G Base Stations |
| UMTS | 3GPP TS 25.214 | 13 October 1999 | All versions of releases 99, 4, 5, 6, 7, 8, 9, 10 and 11 made available on or after the Relevant Date | '991 | 2G/3G Mobile Devices 3G Base Stations |
| UMTS | 3GPP TS 25.213 | 13 October 1999 | All versions of releases 99, 4, 5, 6, 7, 8, 9, 10 and 11 made available on or after the Relevant Date | '991 | 2G/3G Mobile Devices |

Claim No: HP 14 801038

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

PATENTS COURT

B E T W E E N

UNWIRED PLANET INTERNATIONAL LIMITED

(a company incorporated under the laws of the

Republic of Ireland)

Claimant

- and -

(1) HUAWEI TECHNOLOGIES CO., LIMITED

(a company incorporated under the laws of the

People's Republic of China)

(2) HUAWEI TECHNOLOGIES (UK) CO., LIMITED

(3) SAMSUNG ELECTRONICS CO., LIMITED

(a company incorporated under the laws of the

Republic of Korea)

(4) SAMSUNG ELECTRONICS (UK) LIMITED

(5) GOOGLE INC.

(a company incorporated under the laws of

Delaware, USA)

(6) GOOGLE IRELAND LIMITED

(a company incorporated under the laws of the

Republic of Ireland)

(7) GOOGLE COMMERCE LIMITED

(a company incorporated under the laws of the

Republic Ireland)

Defendants

---

PARTICULARS OF CLAIM

---



EIP Europe LLP
Fairfax House
15 Fulwood Place
London WC1V 6HU

020 7440 9510

Ref: 434.LM5
Solicitors for the Claimant

11

IN THE HIGH COURT OF JUSTICE                    Claim No: HP 14 B01038

CHANCERY DIVISION

PATENTS COURT

B E T W E E N

UNWIRED PLANET INTERNATIONAL LIMITED

(a company incorporated under the laws of the Republic of Ireland)

<u>Claimant</u>

- and -

(1) HUAWEI TECHNOLOGIES CO., LIMITED

(a company incorporated under the laws of the People's Republic of China)

(2) HUAWEI TECHNOLOGIES (UK) CO., LIMITED

(3) SAMSUNG ELECTRONICS CO., LIMITED

(a company incorporated under the laws of the Republic of Korea)

(4) SAMSUNG ELECTRONICS (UK) LIMITED

(5) GOOGLE INC.

(a company incorporated under the laws of Delaware, USA)

(6) GOOGLE IRELAND LIMITED

(a company incorporated under the laws of the Republic of Ireland)

(7) GOOGLE COMMERCE LIMITED

(a company incorporated under the laws of the Republic of Ireland)

<u>Defendants</u>

---

## PARTICULARS OF INFRINGEMENT - GOOGLE

---

1.    These are the Google Particulars of Infringement referred to in the Particulars of Claim.  The definitions used in the Particulars of Claim are used herein.  The Fifth to Seventh Defendants are referred to herein as Google Inc., Google Ireland and Google Commerce respectively.

**PART A – INFRINGEMENT OF THE '712 PATENT**

2.      The claim for infringement of the '712 Patent relates to:

(A)     The Google Cloud to Device Messaging Framework (hereinafter the "C2DM Service").

(B)     The Google Cloud Messaging for Android service (hereinafter the "GCM Service").

(C)     Nexus mobile devices running the Android operating system, which are configured so as to be able to use the C2DM and/or GCM Services, namely devices running version 2.2 or higher of the Android operating system ("Google Android Push Devices").  Pending disclosure and/or further information the Claimant refers in particular to the Nexus One, Nexus S, Galaxy Nexus, Nexus 4, Nexus 5, Nexus 7, Nexus 7 LTE and Nexus 10.

(D)     Third party mobile devices running the Android operating system, which are configured so as to be able to use the C2DM and/or GCM Services, namely devices running version 2.2 or higher of the Android operating system ("Third Party Android Push Devices").  Pending disclosure and/or further information the Claimant refers in particular to the Huawei Android Push Devices and Samsung Android Push Devices identified in the Huawei Particulars of Infringement and Samsung Particulars of Infringement, both served herein.

(E)     Google and third party application programs which make use of the C2DM and/or GCM Services ("Google and Third Party Push Applications").  Pending disclosure and/or further information the Claimant refers in particular to the following:

(i)     Google Push Applications: 'Hangouts', 'Gmail', 'Chrome', 'Google Play', and 'Google+' (it is inferred that at least some of these applications previously used the C2DM Service, but that they all now use the GCM Service); and

(ii)    Third Party Push Applications: 'GetNote' and 'Thoughts Cloud' (which use the C2DM Service), 'Where are you sweetie?' and 'Push Notification Test' (which use the GCM Service) and 'Huawei eSpace 2.0', 'Huawei eSpaceMeeting 2.0', 'Huawei', Samsung's 'Find My Phone'/'Remote Controls', 'Samsung Push Service', 'My Galaxy' and 'ChatON' (some of which the Claimant infers previously used the C2DM Service, but which the Claimant infers all now use the GCM Service).

3.      Prior to the issue of the Claim Form in this action, but subsequent to the publication of the application for the '712 Patent, Google Inc. has infringed claims 6 and 7 of the '712 Patent by doing the following acts within the United Kingdom without the consent of the Claimant, that is to say by:

(A)     using the claim 6 method in the United Kingdom by operating and running the C2DM Service and the GCM Service;

(B)  offering the claim 6 method for use in the United Kingdom knowing (or in circumstances where it would be obvious to a reasonable person) that its use there without the consent of the proprietor would be an infringement of the '712 Patent by:

    (i)  offering and allowing third parties to use the C2DM Service and the GCM Service;

    (ii)  disposing and offering to dispose of Google Android Push Devices via its website;

    (iii)  offering and disposing of such devices with Google Push Apps pre-installed; and

    (iv)  offering and disposing of Google Push Apps and Third Party Push Apps through Google Play; and

(C)  offering to dispose of, disposing of, importing and/or keeping (whether for disposal or otherwise) devices according to claim 7 of the '712 Patent by:

    (i)  offering to dispose of and disposing of Google Android Push Devices via its website; and

    (ii)  offering to dispose of and disposing of such devices with Google Push Apps pre-installed.

4.  Further Google Inc. is also liable for Google Android Push Devices and such devices with Google Push Apps pre-installed sold to the public in the United Kingdom by third party retailers (for example Amazon, Argos, Carphone Warehouse, PC World, Clove Technology, Expansys, Phones 4U, John Lewis, O2, Vodafone and/or 3). The Claimant infers that the said devices were imported into the United Kingdom and kept and offered for disposal and disposed of by Google Inc. whereby it infringed claim 7 and whereby it also thereby offered the claim 6 method for use in the United Kingdom. Moreover, as set out more fully in Schedule 1, Google Inc. is also jointly and severally liable with those third party retailers for their acts of:

(A)  offering the claim 6 method for use in the United Kingdom knowing (or in circumstances where it would be obvious to a reasonable person) that its use there without the consent of the proprietor would be an infringement of the '712 Patent; and

(B)  offering to dispose of, disposing of, importing and/or keeping (whether for disposal or otherwise) devices according to claim 7 of the '712 Patent.

5.  Yet further, Google Inc. and Google Ireland are also liable for Third Party Android Push Devices and such devices with Google Push Apps pre-installed sold to the public in the United Kingdom by third parties (for example Huawei Android Push Devices and Samsung Android Push Devices). Google Inc. and Google Ireland encourages and licenses third parties to make, distribute and sell devices with the Android software and Google Push Apps preinstalled.

Accordingly Google Inc. and Google Ireland are jointly and severally liable with those third parties for their acts of:

(A)   offering the claim 6 method for use in the United Kingdom knowing (or in circumstances where it would be obvious to a reasonable person) that its use there without the consent of the proprietor would be an infringement of the '712 Patent; and

(B)   offering to dispose of, disposing of, importing and/or keeping (whether for disposal or otherwise) devices according to claim 7 of the '712 Patent.

6.   In particular the Claimant relies upon the following:

(A)   Both the C2DM Service and the GCM Service are operated by Google Inc.

(B)   The C2DM Service and the GCM Service are (or have) been used by application developers and application users.

(C)   As regards the Google C2DM Service, the same is configured so as to:

(i)   enable application developers, server side applications, device side applications and the users of device side applications to use the C2DM Service, including (without limitation) the provision of the appropriate authorisations and tokens to the said application developers, application servers and applications; and

(ii)   enable and/or facilitate the transmission of push messages from application developers (and/or server side applications) to device side application users (and/or device side applications), including in circumstances where the application developer, server side application, device side application user and/or the device side application are located within the United Kingdom.

(D)   The C2DM Service has been so used worldwide on a very substantial basis, and it is to be inferred that it has been so used within the United Kingdom.

(E)   As regards Google's GCM Service the same is configured so as to:

(i)   enable application developers, server side applications, device side applications and device side application users to use the GCM Service, including (without limitation) the provision of the appropriate authorisations and tokens to the said application developers, application servers and applications; and

(ii)   enable and/or facilitate the transmission of push messages from application developers (and/or server side applications) to device side application users (and/or device side applications), including in circumstances where the application

developer, server side application, device side application user and/or the device side application are located within the United Kingdom.

(F)    The GCM Service has been so used worldwide on a very substantial basis, and it is to be inferred that it has been so used within the United Kingdom.

(G)    Furthermore the Claimant relies upon the download of 'GetNote', 'Thoughts Cloud', 'Push Notification Test' and 'Where are you sweetie?' onto a Nexus 4 device by Dr Robert Lundie Smith, resident in the United Kingdom, on 7 January 2014, and the receipt by him of push notifications relating to 'Thoughts Cloud', 'Push Notification Test' and 'Where are you sweetie?' on the same date.

(H)    Google Inc. advertises the Google Android Push Devices to consumers within the United Kingdom on the website at *google.co.uk*.  For example:

(i)    on 26 December 2010 Google Inc. was offering for sale in the United Kingdom at least the Nexus S Google Android Push Device;

(ii)    on 6 May 2012 Google Inc. was offering for sale in the United Kingdom at least the Galaxy Nexus Google Android Push Device;

(iii)    on 4 October 2012 Google Inc. was offering for sale in the United Kingdom at least the Galaxy Nexus and Nexus 7 Google Android Push Devices;

(iv)    on 18 May 2013 Google Inc. was offering for sale in the United Kingdom at least the following Google Android Push Devices, namely the Nexus 4, Nexus 7 and Nexus 10  Google Android Push Device; and

(v)    on 7 January 2014 Google Inc. was offering for sale in the United Kingdom at least the following Google Android Push Devices, namely the Nexus 5, Nexus 7, Nexus 7 LTE and Nexus 10.

Copies of such advertisements are attached hereto at Annex G1.

(I)    Google Inc. has offered for sale at least the following Google Android Push Devices to consumers within the United Kingdom through its Google Play online store at the website at *https://play.google.com/store?hl=en_GB,* namely the Galaxy Nexus, Nexus 4, Nexus 5, Nexus 7, Nexus 7 LTE and Nexus 10. For example:

(i)    on 7 January 2014, Google Inc. was offering for sale at least the Nexus 5, Nexus 7, Nexus 7 LTE and Nexus 10 Google Android Push Devices;

(ii)    on 15 July 2013, Google Inc. was offering for sale at least the Nexus 4 Google Android Push Device. The Claimant relies upon the offer for sale of a Nexus 4 device

on that date to Mr Kevin Umpelby, resident in the United Kingdom, from Google Play;

(iii)   on 22 November 2013, Google Inc. was offering for sale at least the Nexus 5 Google Android Push Device. The Claimant relies upon the offer for sale of a Nexus 5 device on that date to Mr Kevin Umpelby, resident in the United Kingdom, from Google Play; and

(iv)   sometime prior to 4 July 2012 Google Inc. was offering for sale at least the Galaxy Nexus Google Android Push Device. Furthermore, the Claimant relies upon an article of 4 July 2012 from the website *knowyourmobile.com*.

Copies of such advertisements and a copy of the said article are attached hereto at Annexes G2 and G3 respectively.

(J)   In the premises of the aforesaid offers for sale, it is to be inferred that Google Inc. has imported, disposed of, kept and/or delivered to members of the public (and/or threatens and intends to so do) the aforesaid Google Android Push Devices within the United Kingdom.

(K)   It is to be further inferred that C2DM and/or GCM messages have been and/or will be in the future in the United Kingdom be sent and received on the said sold Google Android Push Devices (or some of them).

(L)   All of the devices identified at sub paragraph H above are devices that had at least one Google Push App pre-installed, namely Gmail and/or Google Play.

(M)   Google Inc. is, and has at all material times been, responsible for the operation of Google Play (formerly called 'Android Market' but referred to as Google Play simpliciter herein). Through Google Play it makes available, and has at all material times made available, for download to the public in the United Kingdom at least one of the said Google Push Applications, namely Hangouts, Gmail, Chrome, and Google+. Hereunder, in particular, each of the aforesaid was available for download in the United Kingdom on 7 January 2014. Copies of the relevant webpages as on that date are attached hereto at Annex G4. In the premises it is to be inferred that members of the public in the United Kingdom have downloaded, and will in the future download, the said Google Push Applications and each of them from Google Play.

(N)   As to Third Party Push Applications, the following were available for download in the United Kingdom on 7 January 2014: 'Thoughts Cloud', 'Push Notification Test' and 'Where are you sweetie?' (Trial and Full version),' GetNote', 'Huawei eSpace 2.0', 'Huawei eSpaceMeeting 2.0', 'Huawei', 'Samsung Push Service', and/or 'ChatON'. 'My Galaxy' was available for download in the United Kingdom on 16 February 2014. Copies of the

relevant webpages as on those dates are attached hereto at Annex G5. In the premises it is to be inferred that members of the public in the United Kingdom have downloaded, and will in the future download, the said Third Party Applications and each of them from Google Play.

(O)    Furthermore the Claimant relies upon the aforesaid download of 'Thoughts Cloud', 'Push Notification Test', 'Where are you sweetie?' and 'GetNote' onto a Nexus 4 device by Dr Robert Lundie Smith, resident in the United Kingdom, on 7 January 2014, and the receipt by him of push notifications relating to 'Thoughts Cloud', 'Push Notification Test' and 'Where are you sweetie?' on the same date.

(P)    As regards offers for sale of Google Android Push Devices by third parties, the Claimant will refer to:

(i)    the offer for sale by Vodafone on 22 July 2010 of the Nexus One Google Android Push Device by an advertisement located on the website *shop.vodafone.co.uk*;

(ii)    the offers for sale by Carphone Warehouse on 15 January 2011 of the Nexus S Google Android Push Device and 7 January 2014 of the Nexus 4 and Nexus 5 Google Android Push Devices located on the website *www.carphonewarehouse.com*;

(iii)    the offer for sale by Phones 4U on 7 April 2012 of the Galaxy Nexus Google Android Push Device by an advertisement located on the website *www.phones4u.co.uk*;

(iv)    the offers for sale by 3 on 10 May 2012 of the Galaxy Nexus Google Android Push Device and 7 January 2014 of the Nexus 5 Google Android Push Device by advertisements located on the website *store.three.co.uk*;

(v)    the offer for sale by Clove Technology on 10 May 2012 of the Galaxy Nexus Google Android Push Device by an advertisement located on the website *www.clove.co.uk*;

(vi)    the offers for sale by Expansys on 6 May 2012 of the Galaxy Nexus Google Android Push Device and 7 January 2014 of the Nexus 10 Google Android Push Device by advertisements located on the website *www.expansys.com*;

(vii)    the offers for sale by O2 on 7 January 2014 of the Nexus 5 and Nexus 7 LTE Google Android Push Devices by advertisements located on the website *www.o2.co.uk*;

(viii)    the offer for sale by John Lewis on 7 January 2014 of the Nexus 7 Google Android Push Device by an advertisement located on the website *www.johnlewis.com*;

(ix)  the offer for sale by PC World on 7 January 2014 of the Nexus 7 Google Android Push Device by an advertisement located on the website *www.pcworld.co.uk*;

(x)  the offer for sale by Argos on 7 January 2014 of the Nexus 7 Google Android Push Device by an advertisement located on the website *www.argos.co.uk*; and

(xi)  the offer for sale by Amazon on 7 January 2014 of the Nexus 7 LTE Google Android Push Device by an advertisement located on the website *www.amazon.co.uk*.

The full details of the URLs associated with each said offer for sale and the dates when such offers were made are set out in Schedule 2. Copies of the aforesaid offers for sale can be provided to the Defendants on reasonable request.

(Q)  As regards Third Party Android Push Devices the Claimant relies upon the sales of Huawei Android Push Devices and Samsung Android Push Devices identified in the Huawei Particulars of Infringement and the Samsung Particulars of Infringement, both served herein.

## PARTICULARS OF KNOWLEDGE

The Claimant is currently unaware of all materials relevant to the knowledge of Google Inc., but at trial will rely upon all such acts. Pending disclosure and/or further information the Claimant relies upon the following:

(R)  The Claimant infers that Google Inc. knows and at all material times has known how the C2DM and GCM Services operate. Moreover Google Inc. plainly intended that the C2DM and GCM Services (on their own, and a fortiori when used with Google or Third Party Push Applications and/or on Google or Third Party Push Devices) would be put into effect within inter alia the United Kingdom. The C2DM and GCM Services are an integral feature of inter alia Google and Third Party Push Devices, being mobile devices specifically marketed and sold in the United Kingdom; are integral to Google and Third Party Push Applications, being applications preloaded onto devices made available in the United Kingdom, or downloadable onto devices located there from Google Play; and the C2DM and GCM Services are services which are publicly promoted and supported within inter alia the United Kingdom by Google Inc.

(S)  Further and in any event, it would have been obvious to a reasonable person in all the circumstances that the C2DM and GCM Services (and applications using them, and/or devices supporting and/or running such applications) were suitable for putting, and intended to put, the inventions of the said claim into effect in the United Kingdom.

7.  Further prior to the issue of the Claim Form in this action, but subsequent to the publication of the application for the '712 Patent, Google Inc. has infringed at least claim 6 of the '712 Patent

by, within the United Kingdom, offering to supply to persons other than a licensee of the Claimant or another person entitled to work the invention with means relating to an essential element of the invention of the said claims, for putting the invention into effect, knowing (alternatively in circumstances where it would be obvious to a reasonable person) that those means are suitable for putting, and are intended to put, the invention into effect in the United Kingdom. In particular the Claimant will say that insofar as any of the acts complained of under paragraphs 3 and/or 4 and/or 5 and/or 6 above does not constitute a direct infringement of claim 6 of the '712 Patent by Google Inc. it constitutes an indirect infringement thereof.

## PARTICULAR OF KNOWLEDGE

Hereunder the Particulars of Knowledge under paragraph 6 are repeated.

8.  Google Ireland and Google Commerce have acted as Google Inc.'s agents in respect of at least some of its acts of sale importation keeping and disposal and supply of Google Android Push Devices complained of herein and each is accordingly also liable for the same. In particular Google Ireland and Google Commerce did all or some of the aforesaid acts in relation to the sale of a Nexus 4 device on 15 July 2013 to Mr Kevin Umpelby, resident in the United Kingdom, from Google Play, and the subsequent importation keeping disposal and supply of the same to Mr. Umpelby.

9.  The Claimant infers that in all material respects Google Ireland and Google Commerce's knowledge is the same as Google Inc.'s knowledge.

10. Further or alternatively all acts of Google Inc. and Google Ireland and Google Commerce complained of herein relating to Google Android Push Devices were carried out pursuant to a close commercial relationship a particular part of which was an agreement and plan to exploit the United Kingdom market for such devices by inter alia carrying out the acts of which complaint is made herein. Accordingly each of Google Inc., Google Ireland and Google Commerce is jointly and severally liable for all such acts carried out by them pursuant to that relationship agreement and plan.

11. Yet further or in the further alternative, Google Inc. is liable, jointly and severally, with the users of the C2DM Service and the GCM Service who choose to send and/or receive Push Notifications and thereby use the method of claim 6 of the '712 Patent.

## PARTICULARS

(A)  As mentioned above, the C2DM and/or GCM Services are designed and intended to allow application developers to create applications to be installed on mobile devices running Google's Android operating system which can obtain appropriate tokens to enable the receipt of 'pushed' data, and to use application servers to 'push' packets of data from their application servers to those applications.

(B)   It is the Claimant's case that application developers (and others who operate or maintain such application software) who send C2DM and/or GCM push messages (whether such message is sent from or received in the United Kingdom) are using the method of claim 6 of the '712 Patent.

(C)   The Claimant infers that Google Inc. encourages and licenses such developers to use the said services to send such push messages and provides access to its service to enable such developers to do the same.

(D)   Further it is the Claimant's case that users of applications on devices which are configured to receive C2DM and/or GCM push messages, and who do receive those messages, in the United Kingdom are using the method of claim 6 of the '712 Patent. Many will do so other than for private and non-commercial purposes.

(E)   Within the United Kingdom, Google Inc. provide to the public the Google Android Push Devices and/or the Google Push Applications and/or the Third Party Push Applications, and have advertised and encouraged the sale and use of the same, knowing that they and each of them are designed and adapted to use the C2DM and/or GCM Services and (it is to be inferred) intending that they be so used.

(F)   In the premises Google Inc. has incited and/or procured those app developers and/or application users, to act as aforesaid, further or alternatively has acted in a common design with them in so doing, and is liable, jointly and severally with them, for their said acts of infringement.

## PART B – INFRINGEMENT OF THE DECLARED ESSENTIAL PATENTS

12.   The claim for infringement of the Declared Essential Patents relates to:

(A)   Nexus mobile devices that operate in accordance with one or more Relevant Versions & Releases of a 2G and/or 3G telecommunications standard technical specification as set out in Schedule 1 to the Particulars of Claim ("Google 2G/3G Mobile Devices"). Pending disclosure and/or further information the Claimant refers in particular to the Nexus One, Nexus S, Galaxy Nexus, Nexus 4, Nexus 5 and Nexus 7 LTE.

(B)   Nexus mobile devices that operate in accordance with one or more Relevant Versions & Releases of a 4G telecommunications standard technical specification as set out in Schedule 1 to the Particulars of Claim ("Google 4G Mobile Devices"). Pending disclosure and/or further information the Claimant refers in particular to the Nexus 5 and Nexus 7 LTE. A Google 4G Mobile Device may also be a Google 2G/3G Device. (Google 2G/3G Mobile Devices and Google 4G Mobile Devices are referred to collectively as "Google Mobile Devices".)

13. Google Mobile Devices that implement Relevant Versions & Releases of the standards as set out in Schedule 1 to the Particulars of Claim:

    (A) are products that fall within the identified claims of the Declared Essential Patents as set out in Schedule 3 hereto under s.60(1)(a);

    (B) perform or are capable of performing the method of the identified claims of the Declared Essential Patents as set out in Schedule 3 hereto under s.60(1)(b), whereby their offer for sale and sale constitutes the making available of the methods of the said claims; and

    (C) are means relating to an essential element of the invention as claimed in the identified claims of the Declared Essential Patents for putting the invention into effect as set out in Schedule 3 hereto under s.60(2).

14. Google Inc. has infringed the Declared Essential Patents by doing the following acts without the consent of the Claimant:

    (A) As regards infringement under s.60(1)(a): disposing of, offering to dispose of, importing and/or keeping (whether for disposal or otherwise) the Google Mobile Devices in the United Kingdom.

    (B) As regards infringement under s.60(1)(b): disposing of and/or offering to dispose of the Google Mobile Devices in the United Kingdom, thereby offering and making the patented methods available for use knowing (or in circumstances where it would be obvious to a reasonable person) that their use there without the consent of the proprietor would be an infringement of the Declared Essential Patents.

    (C) As regards infringement under s.60(2): by supplying or offering to supply the Google Mobile Devices in the United Kingdom to persons other than a licensee or other person entitled to work the invention, knowing (alternatively in circumstances where it would be obvious to a reasonable person) that those means are suitable for putting, and are intended to put, the invention into effect in the United Kingdom.

15. Further Google Inc. is also liable for Google Mobile Devices sold to the public in the United Kingdom by third party retailers (for example Amazon, Carphone Warehouse, Clove Technology, Expansys, Phones 4U, O2, Vodafone and/or 3). The Claimant infers that the said devices were imported into the United Kingdom and kept and offered for disposal and disposed of by Google Inc. whereby it thereby offered the patented methods for use in the United Kingdom. Moreover, as set out more fully in Schedule 1 to these Particulars of Infringement, Google Inc. is also jointly and severally liable with those third party retailers for their acts of:

    (A) offering to dispose of, disposing of, importing and/or keeping (whether for disposal or otherwise) devices according to the product claims of the Declared Essential Patents;

(B)   offering the patented methods for use in the United Kingdom knowing (or in circumstances where it would be obvious to a reasonable person) that their use there without the consent of the proprietor would be an infringement of the Declared Essential Patents; and

(C)   supplying or offering to supply means relating to an essential element of the patented inventions knowing (alternatively in circumstances where it would be obvious to a reasonable person) that those means are suitable for putting, and are intended to put, the invention into effect in the United Kingdom.

*Google 2G/3G Mobile Devices*

(D)   Google Inc. has offered for disposal and disposed of, (or is liable for the offer for disposal and disposal by third parties of) the Google 2G/3G Mobile Devices, and in particular the Nexus One, Nexus S, Galaxy Nexus, Nexus 4, Nexus 5 and Nexus 7 LTE in the United Kingdom. Hereunder the Claimant refers to paragraphs 6(H), 6(I) and 6(P) above, and the sub-paragraphs thereunder, insofar as they relate to the said devices.

*Google 4G Mobile Devices*

(E)   Google Inc. has offered for disposal and disposed of, (or is liable for offer for disposal and disposal by third parties of) the Google 4G Mobile Devices, and in particular the Nexus 5 and Nexus 7 LTE in the United Kingdom. Hereunder the Claimant refers to paragraphs 6(H) 6(I) and 6(P) above, and the sub-paragraphs thereunder, insofar as they relate to the said devices.

## PARTICULARS OF KNOWLEDGE UNDER S60(1)(b) AND 60(2)

Pending disclosure and/or the provision of further information, the Claimant relies upon the following facts and matters:

(F)   Google Inc. is and at all material times has been responsible (alternatively jointly responsible with its co-developers of Nexus devices including LG Electronics, Asus and Samsung) for the design and manufacture of the Google 2G/3G Mobile Devices and the Google 4G Mobile Devices.

(G)   Google Inc. has considerable expertise in the design and manufacture of mobile communication devices and has a substantial knowledge of such matters by reason of its involvement in the industry.

(H)   In the premises, Google Inc. knows or ought to know how the Google Mobile Devices operate and it is reasonable to infer that Google Inc. has knowledge of the design and functionality of the Google 2G/3G Mobile Devices and the Google 4G Mobile Devices to at least the level of detail of the claims of the Declared Essential Patents.

(I)   The Google Mobile Devices implement certain telecoms standards including the Relevant Versions & Releases of the standards and technical specifications complained of.

(J)   Google Inc. intends that the Google Mobile Devices be operated in accordance those standards, alternatively it is obvious that they will be so operated.

(K)   Google Inc. knows, alternatively it is obvious to a reasonable person, that operation of devices that implement a standard will infringe relevant methods claimed in patents declared to ETSI as Essential to that standard.

(L)   The Declared Essential Patents have been declared as Essential by means of declarations that are publicly available through ETSI.

(M)   The telecoms field is heavily covered by patents.

(N)   Google Inc. (alternatively a reasonable person in the circumstances) knows or ought to be aware of patents with claims covering the Google Mobile Devices including the Declared Essential Patents.

(O)   In any event, upon service of this claim Google Inc. is now and in the future will be specifically aware of the Claimant's contentions that Google Inc.'s acts in relation to the Google Mobile Devices infringe the Declared Essential Patents.

16.   Google Ireland and Google Commerce have acted as Google Inc.'s agents in respect of at least some of its acts of importation keeping offering to dispose and disposal and supply of Google Mobile Devices complained of herein and each is accordingly also liable for the same.  Hereunder the Claimant refers to paragraph 8 above.

17.   The Claimant infers that in all material respects Google Ireland and Google Commerce's knowledge is the same as Google Inc.'s knowledge.

18.   Further or alternatively all acts of Google Inc., Google Ireland and Google Commerce complained of herein relating to Google Mobile Devices were carried out pursuant to a close commercial relationship a particular part of which was an agreement and plan to exploit the United Kingdom market for such devices by inter alia carrying out the acts of which complaint is made herein. Accordingly each of Google Inc., Google Ireland and Google Commerce is jointly and severally liable for all such acts carried out by them pursuant to that relationship agreement and plan.

RICHARD MEADE QC

ADRIAN SPECK QC

MARK CHACKSFIELD

JAMES WHYTE

**STATEMENT OF TRUTH**

The Claimant believes that the facts stated in these Particulars of Infringement are true.

Signed:

Name:        Gary Moss

Position:     Partner at EIP Europe LLP (Solicitors for the Claimant)

Dated:        10 March 2014

Served this 10th day of March 2014 by EIP Europe LLP, Solicitors for the Claimant

14

**Schedule 1 – Joint and several liability with third party retailers**

1.  Google Inc. has at all material times operated in close partnership in the United Kingdom with a number of third party retailers of Google Android Push Devices, Google 2G/3G Mobile Devices and Google 4G Mobile Devices, in particular Amazon, Argos, Carphone Warehouse, Currys PC World, John Lewis, Phones 4U, Clove Technology, Expansys, O2, Vodafone and/or 3.

2.  As regards partnership with third parties, the Claimant will refer to:

    (A)  Google Inc. operates and/or controls a set of so-called "Business Development and Partnership teams" which teams are described briefly on Google Inc.'s website at *https://www.google.com/about/jobs/teams/partnerships/* (a copy of which is attached hereto at Annex G6).

    (B)  Annex G6 further states that one of the aforesaid Business Development and Partnership teams is based in London

    (C)  As regards the function and role of the Business Development and Partnership (or just 'Partnership') team in London the Claimant will refer to the following job advertisements for members of that team (copies of which are attached hereto at Annex G7), which contain the quoted text below in respect of the roles being advertised:

        (i)  Strategic Partner Development Manager Product Partnerships (Chrome/Nexus Devices, Retail)

        *"This is a key role, responsible for implementing and optimizing relationships with partners in the UK and EMEA that distribute Google's Chrome platform and Chrome & Nexus hardware, and enhance the proposition around the Chrome and Nexus. You'll be the primary partner contact, driving the implementation and optimization of our collaboration and driving tactics designed to improve the usage and distribution of Google's platforms, applications, and services. You will need to have a deep understanding of Google Chrome, Chrome OS, and Chrome/Nexus hardware (e.g. Nexus phones & tablets, Chromebooks, Chromecast) in addition to Google's applications and services such as Google Docs and Drive. You'll track and analyze key metrics, proactively resolve business and technical issues with our partners and identify new partnership opportunities. This is a cross-functional and international role: you will be working closely with Marketing, Product Management, Engineering, Sales, and PR teams in UK as well as across Europe and globally. The role is*

15

*based in London and involves extensive business travel, including within Europe and to the US."*

*"Maintain strong direct relationships with key partners; Assist with the contractual elements of our partnerships through amendments, extensions, and renewals."*

*"Collaborate with cross-functional teams and International teams based in London and the US to structure and execute business initiatives, develop work plans, lead analysis and develop and communicate final recommendations."*

(ii)    Android Partner Support Manager, EMEA

*"Responsibilities... Cultivate strong relationships with partners including carriers and OEM's..."*

(iii)    Strategic Partner Development Manager, Android Carrier Retail

*"As the manager of carrier retail sales you will be charged with building the Android presence in the retail stores of the carriers and its dealers channels. As part of your role you will lead all Nexus sales in that channel and manage the sales aspects of executing the Android presence in stores. You will partner cross functionally with the marketing teams, the partnership group and the product organization at Google to drive Nexus/Android sales and POS experience in this channel."*

*"Responsibilities*

*Lead the relationship with the key decision makers at the carriers and dealers to maximize sales of our Nexus products and related accessories.*

*Serve as the primary interface from a sales perspective to ensure a great consumer experience for Android and Nexus in stores*

*Lead all aspects of our relationships with our key strategic partners, driving new opportunities for margins and product distribution*

*Work closely with our Nexus OEM partners in market to maximize sales in the designated market".*

(D)    Google Inc. also operates and/or controls a set of so-called "Product Management" teams, which teams are described briefly on Google Inc.'s website at *www.google.com/about/jobs/teams/product-management/* (a copy of which is

attached hereto at Annex G8), and according to which "*The Product Management team works closely with our engineers to guide products from conception to launch, and with our business partners to generate profitable revenue streams*".

(E)     Annex G8 further states that one of the aforesaid Product Management teams is based in London.

(F)     As regards the function and role of the Product Management team in London, the Claimant will refer to the following job advertisements for members of that team (copies of which are attached hereto at Annex G9), which contain the quoted text below in respect of the role of Product Manager being advertised:

> "*The Product Management team works closely with our engineers to guide products from conception to launch, and with our business partners to generate profitable revenue streams. As part of the Product Management team, you bridge technical and business worlds as you design technologies with creative and prolific engineers and then zoom out to lead matrix teams such as Sales, Marketing and Finance, to name a few. You have a bias for action and can break down complex problems into steps that drive product development at Google speed. As a Product Manager, you can be part of shaping Google's next game-changer.*
>
> *Responsibilities*
>
> *Launch products...*"

(G)     Google Inc. also operates and/or controls a set of so-called "Marketing & Communications" teams, which teams are described briefly on the Google Inc.'s website at *www.google.com/about/jobs/teams/markcomm/* (a copy of which is attached hereto at Annex G10).

(H)     Annex G10 further states that one of the aforesaid Marketing & Communications teams is based in London.

(I)     As regards the function and role of the Marketing & Communications team in London, the Claimant will refer to the following job advertisements for members of that team (copies of which are attached hereto at Annex G11), which contain the quoted text below in respect of the roles being advertised:

(i)     Head of Retail Marketing, EMEA

> "*As a Marketing leader at Google, you will be responsible for executing retail presences in 3rd party retail in EMEA. You will manage a team that works*

*closely with CE retailers, carriers, and with US and EMEA country marketing teams to bring Google/Android to life in their stores"*

*"Responsibilities*

*Develop and execute EMEA retail strategy, including prioritising opportunities and developing detailed end-to-end plans for growing retail footprint and driving footfall. Works with country teams to update partners on plans, collect partner asks and info, collect sales and other data, and support rollouts.*

*Oversee all co-marketing activities and activities driving awareness and footfall, including in-store events, custom in-store placements, PR events, product launches, seasonal promotions.*

*Work with country teams to optimise local operations, including store planning (scoping and prioritising new stores, adapting designs to fit individual stores, store-level installation/requirements, working with agency, detailers, and partners on launch execution), local operations (inventory control, technical issues, sales performance). QA of in-store deployments."*

(ii)    PMM, Retail Marketing Programs, EMEA

*"As a Product Marketing Manager at Google, you will be responsible for driving and implementing Google's retail marketing programs in EMEA. You will work cross-functionally and across EMEA countries to prioritise and execute on the highest-value retail marketing opportunities."*

*"Responsibilities*

*Launch Program Management. Coordinate between product marketing teams and retail teams to ensure smooth planning and execution for new device launches in retail.*

*Develop calendar of retail marketing programs and events to drive interest and excitement for Google products and Google in-store presences. Work with US teams and local marketing teams to drive launch activity and work to maintain and grow footfall traffic over time.*

*Develop Android training strategy, programs, and content to reach sales associates that sell Android devices around the world. Work with country teams on deployment with partners.*

> *Manage quality standards for in-store deployments (3rd party merchandising, auditing, mystery shopping, etc.)"*

3.   The Claimant will also rely upon the following facts and matters:

(A)   The statement by Google Inc. on 26 April 2010 on its website *www.blogspot.co.uk* and located at the URL *http://googlenexusoneboard.blogspot.co.uk/2010/04/update-on-nexus-one-partnerships.html* that "*[w]hen we launched Nexus One in January, we announced partnerships with Vodafone in Europe and Verizon Wireless in the US. We have news on both fronts. Today, Vodafone begins accepting pre-orders for Nexus One from customers in the United Kingdom at www.vodafone.co.uk/nexusone, and on April 30th Vodafone will start selling Nexus One in their UK stores, online, and over the phone.*" It is to be inferred that the Nexus One was being offered for sale in the United Kingdom on 30 April 2010 by Vodafone.

(B)   The statement by Google Inc. on 14 May 2010 on its website *www.blogspot.co.uk* and located at the URL *http://googleblog.blogspot.co.uk/2010/05/nexus-one-changes-in-availability.html* regarding the availability of the Nexus One in Europe "*where we [Google Inc.] are working with partners to offer Nexus One to consumers through existing retail channels.*"

(C)   The statement by Google Inc. on 26 December 2010 on the webpage at *http://www.google.co.uk/nexus/tech-specs.html* that "*[a]fter December 16, Nexus S will be sold unlocked and carrier-independent initially through Best Buy stores in the U.S. and after December 20 at Carphone Warehouse stores in the UK*" and the provision of deep links to inter alia the website of Carphone Warehouse.  It is to be inferred that the Nexus S was being offered for sale in the United Kingdom on that date by Carphone Warehouse.

(D)   Google Inc.'s provision of information about the Galaxy Nexus device on the webpage *http://www.google.co.uk/nexus#* on 6 May 2012, and the associated provision of deep links to the websites of Phones 4U, 3, Carphone Warehouse, Vodafone, O2, Clove and Expansys, all of which deep links were revealed to the user of the webpage by selecting the "buy" option from a menu. It is to be inferred that the Galaxy Nexus was being offered for sale in the United Kingdom on that date by each of Phones 4U, 3, Carphone Warehouse, Vodafone, O2, Clove and Expansys.

(E)   The statements by Google Inc. on 7 January 2014 on the webpage at *www.google.co.uk/nexus/5/* that users (including those within the United Kingdom) should "*[g]et [their] Nexus 5 today from Google Play, or from one of our partners*"

and the provision of deep links to inter alia the websites of Carphone Warehouse, O2 and 3.  It is to be inferred that the Nexus 5 was being offered for sale in the United Kingdom on that date by each of Carphone Warehouse, O2 and 3.

(F)     The statements by Google Inc. on 7 January 2014 on the webpage at *www.google.co.uk/nexus/7/* that the Nexus 7 and Nexus 7 LTE "*is available now on Google Play, or at a range of retailers including Currys PC World, Tesco, John Lewis, Amazon and Argos*" and the provision of deep links (as regards the Nexus 7) to inter alia the websites of O2, John Lewis, Currys PC World, Argos, Tesco and Amazon, and (as regards the Nexus 7 LTE) to inter alia the websites of O2. It is to be inferred that the Nexus 7 was being offered for sale in the United Kingdom on that date by each of Currys PC World, Tesco, John Lewis, Amazon and Argos and that the Nexus 7 LTE was being offered for sale in the United Kingdom on that date by O2.

Copies of the aforesaid statements are attached hereto at Annex G12.

**Schedule 2 – Examples of offers for sale of Google Devices in the United Kingdom by third party retailers**

| Retailer | Google Device | Date | URL of offer |
|---|---|---|---|
| Vodafone | Nexus One | 22 July 2010 | http://shop.vodafone.co.uk/shop/mobile-phone/google-nexus-one/ which offer is now accessible on the so-called Internet Archive under the URL https://web.archive.org/web/20100722133633/http://shop.vodafone.co.uk/shop/mobile-phone/google-nexus-one/ |
| Carphone Warehouse | Nexus S | 15 January 2011 | http://www.carphonewarehouse.com/mobiles/mobile-phones/NEXUS_S_FROM_GOOGLE, which offer is now accessible on the so-called Internet Archive under the URL https://web.archive.org/web/20110115121155/http://www.carphonewarehouse.com/mobiles/mobile-phones/NEXUS_S_FROM_GOOGLE |
| Phones 4U | Galaxy Nexus | 7 April 2012 | http://www.phones4u.co.uk/reviews/galaxy-nexus.asp?cid=Google_Nexus, which offer is now accessible on the so-called Internet Archive under the URL https://web.archive.org/web/20120407175518/http://www.phones4u.co.uk/reviews/galaxy-nexus.asp?cid=Google_Nexus |
| 3 | Galaxy Nexus | 10 May 2012 | http://store.three.co.uk/view/product/q1_catalog/threecatdevice/2409;jsessionid=BE7344E6F7132F444F7D0B26329C3DB4?priceplan=PAY_MONTHLY, which offer is now accessible on the so-called Internet Archive under the URL https://web.archive.org/web/20120510110259/http://store.three.co.uk/view/product/q1_catalog/threecatdevice/2409;jsessionid=BE7344E6F7132F444F7D0B26329C3DB4?priceplan=PAY_MONTHLY |
| Clove Technology | Galaxy Nexus | 10 May 2012 | http://www.clove.co.uk/samsung-galaxy-nexus-16gb, which offer is now accessible on the so-called Internet Archive under the URL |

| | | | |
|---|---|---|---|
| Expansys | Galaxy Nexus | 6 May 2012 | http://web.archive.org/web/20120510232900/http://www.clove.co.uk/sahnsung-galaxy-nexus-16gb |
| | | | http://www.expansys.com/google-galaxy-nexus-16gb-black-224319/, which offer is now accessible on the so-called Internet Archive under the URL http://web.archive.org/web/20120506045951/http://www.expansys.com/google-galaxy-nexus-16gb-black-224319/ |
| Carphone Warehouse | Nexus 4 | 7 January 2014 | http://www.carphonewarehouse.com/news/latest-news/nexus-4 |
| Expansys | Nexus 10 | 7 January 2014 | http://www.expansys.com/google-nexus-10-16gb-black-253797/?utm_source=google&utm_medium=shopping&utm_campaign=base&lfto=t701&mkwid=svHjLhmZB&kword=advords_productfeed&gclid=CJ71-I6j57sCFW0bLtAodmIVgAfA |
| Carphone Warehouse | Nexus 5 | 7 January 2014 | http://carphonewarehouse.com/mobiles/phones/nexus-5 |
| O2 | Nexus 5 | 7 January 2014 | https://www.o2.co.uk/shop/phones/lg/nexus-5/ |
| 3 | Nexus 5 | 7 January 2014 | http://www.three.co.uk/Discover/Devices/Google/Nexus_5?tab=Android%2520%252 |
| John Lewis | Nexus 7 | 7 January 2014 | http://www.johnlewis.com/new-google-nexus-7-tablet-qualcomm-snapdragon-s4-1-5ghz-android-7-nfc-wi-fi-16gb-black/p604031 |
| PC World | Nexus 7 | 7 January 2014 | http://www.pcworld.co.uk/gbuk/laptops-netbooks/ipad-tablets-and-ereaders/tablets/google-new-nexus-7-by-asus-32-gb-21515696-pdt.html |
| Argos | Nexus 7 | 7 January 2014 | http://www.argos.co.uk/static/Product/partNumber/1388381.htm |
| Amazon | Nexus 7 | 7 January 2014 | http://www.amazon.co.uk/gp/product/B00EANTELE/ref=noref?ie=UTF8&psc=1&s=computers |
| O2 | Nexus 7 LTE | 7 January 2014 | https://www.o2.co.uk/shop/tablets/google/nexus-7-4g-ready-black/ |

**Schedule 3 – Infringed claims of Declared Essential Patents**

| Patent | Infringed by | Claims infringed under indicated section of the Patents Act 1977 | | | |
|---|---|---|---|---|---|
| | | s.60(1)(a) | s.60(1)(b) | s.60(2) | |
| '818 | Google 2G/3G Mobile Devices | 9 to 16 | 1 to 8 | 1 to 8 | |
| '744 | Google 4G Mobile Devices | 12, 13 | 1, 3, 4, 5, 6, 9, 10 | 1, 3, 4, 5, 6, 9, 10 | |
| '287 | Google 4G Mobile Devices | 6 to 11 | 1 to 4 | 1 to 4, 12 to 15 | |
| '514 | Google 4G Mobile Devices | 6 to 10 | 1 to 5 | 1 to 5, 11 to 16 | |
| '991 | Google 2G/3G Mobile Devices | 34 to 37 | 3 to 6, 17 to 19 | 3 to 14, 17 to 19 | |

23

Claim No: HP 14 BO1038

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

PATENTS COURT

B E T W E E N

UNWIRED PLANET INTERNATIONAL LIMITED

(a company incorporated under the laws of the

Republic of Ireland)

Claimant

- and -

(1) HUAWEI TECHNOLOGIES CO., LIMITED

(a company incorporated under the laws of the

People's Republic of China)

(2) HUAWEI TECHNOLOGIES (UK) CO., LIMITED

(3) SAMSUNG ELECTRONICS CO., LIMITED

(a company incorporated under the laws of the

Republic of Korea)

(4) SAMSUNG ELECTRONICS (UK) LIMITED

(5) GOOGLE INC.

(a company incorporated under the laws of

Delaware, USA)

(6) GOOGLE IRELAND LIMITED

(a company incorporated under the laws of the

Republic of Ireland)

(7) GOOGLE COMMERCE LIMITED

(a company incorporated under the laws of the

Republic of Ireland)

Defendants

---

**PARTICULARS OF INFRINGEMENT - GOOGLE**

---



EIP Europe LLP
Fairfax House
15 Fulwood Place
London WC1V 6HU

020 7440 9510

**Ref:  434.LM5**
**Solicitors for the Claimant**

24